Barnard, P. J.
There is a grave doubt whether or not the representation that the defendant had $20,000,000 in its treasury was ever made. There *5 must have been a misunderstanding. The complaint avers no such fact. That is based upon a general charge that the stock was fully subscribed for to the amount required by law, and the requisite amount thereof actually paid in; that such facts were false. There is no proof of this except what is involved in the fact that $20,000,000 cash was in the treasury. The scrip contained on its face a statement that the capital stock was $5,000,000 only.
The complaint averred that the false statements therein averred as a basis for the action, were made by the president- and secretary of the company. Upon the trial, it was conceded that the president took no part in the negotiations for the right of way in Myrtle avenue. The case, therefore, under the finding, rests upon three witnesses and the probabilities of the case. The plaintiff and his attorney testify to the state'ment. The secretary testifies that he made no such representation.
It is to be assumed that the company had not obtained the consent of the common council or property-owners. The fact is inferenfcially stated by the secretary, and is not contradicted. It would be quite unusual that such a large sum would be in the treasury before it was known that any road could be built.
It would also be a fair inference that a secretary who had no interest to subserve should so state to the plaintiff if the fact was untrue ; it was so easily disproved. He knew the amount of the entire capital stock. There is no proof of any bonded debt. It is still more unusual that a bond could be negotiated until the road was an assured thing, having all necessary consents to its construction. It seems plain from the whole evidence, that the company had a merely formal organization, with no more means than was needed to incorporate it; that it was trying to get the consent of *6 the common council and of the land-owners ; that, in pursuance of this plan, the company agreed to buy of the defendant a right of way in front of his lands on Myrtle avenue for $25,000 in stock, and that this, sum was to include the friendly aid of a large land-owner in getting others’ consent; that, if any representation was made, it was of future results when the road was, built, and that sufficient capital was at hand to build it, —meaning that there were men ready and willing to subscribe for and take either stock or bonds for that purpose. If $20,000,000 was mentioned, it was in this connection, and not as a statement of an existing fact.
The gift of the stock was an absolute one to the plaintiff’s children. He took the scrip to himself, and then surrendered it and took scrip back to his three infant children in their own names. This was a complete gift of the stock, so far as to permit the children to so elect when they arrived at the age of consent. The title was changed as to the plaintiff, and if the children were adults there would be no question but that the gift was completed. The donor had conveyed a title, and it was absolutely put out of the power of the donor to reclaim it.
The scrip was evidence of property only, and was good to evidence it for the donees, even if the same was not delivered to them. The books of the company would give the evidence also, and a transfer there, without any issue of scrip, would be sufficient to change the title (Holbrook v. New Jersey Zinc Co., 57 N. Y. 616; Rathbun v. Rathbun, 6 Barb. 98). In the case of an infant,.an acceptance will be inferred from the beneficial nature of the grant (Spencer v. Carr, 45 N. Y. 406; Jackson v. Bodle, 20 Johns. 184). If the title was changed to the stock, then the principle is universal, that until the stock is restored or tendered, bo action will lie to set aside the agreement, even if *7 fraudulently obtained (Bowen v. Mandeville, 95 N. Y. 237).
The judgment should be reversed, and a new trial granted, costs to abide event.
Pratt and Dykman, JJ., concur.