(61 App. Div. 205.)

RICHARDSON et al. v. EMMETT.

(Supreme Court, Appellate Division, First Department. May 17, 1901.)

1. GIFTS—REFEREE—EVIDENCE—DECISION.
    Defendant's uncle assigned certain stock to her, had it transferred on the books of the company, and told his daughter that he had made the gift. For many years thereafter defendant personally collected and disposed of the dividends on the stock, but the uncle retained possession of the certificates of stock, except for a short period, and exercised absolute control over the stock. *Held*, that the referee's finding that there was a valid gift of the stock was not against the weight of evidence.

2. SAME—EVIDENCE—TRANSACTION WITH DECEDENT—ADMISSIBILITY.
    Under Code Civ. Proc. § 829, providing that a party shall not be examined as a witness in his own behalf, against the executor, administrator, or survivor of a deceased person, concerning a personal transaction between the witness and the deceased person, the testimony of defendant, claiming a gift from her uncle of certain corporate stock in controversy, that she had such stock in her possession at a certain time, was inadmissible to show delivery of the stock by deceased to defendant.

3. SAME—RES GESTÆ.
    Where defendant claimed certain corporate stock under a gift from her uncle, evidence of plaintiff that the uncle had transferred other securities to defendant, apparently assigning title to her, but really retaining ownership, not being part of the res gestæ, was properly excluded.

Appeal from judgment on report of referee.

Action by Emma J. Richardson and another, as administrators, etc., of Joseph Richardson, deceased, against Emily Emmett. From a judgment for defendant, plaintiffs appeal. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Delancey Nicoll, for appellants.
Howard A. Taylor, for respondent.

INGRAHAM, J. The action was originally brought by the personal representatives of Joseph Richardson, deceased, against the Atlantic Trust Company, to recover the surplus arising upon the sale

by the defendant of 200 shares of the capital stock of the New York, Lackawanna & Western Railroad Company, held by it as security for a loan made to Joseph Richardson in his lifetime; the said trust com pany having sold the stock, and after payment of the amount due up on the loan retained the surplus of $9,900.50. On motion of the Atlantic Trust Company, the present defendant was substituted in its place as a person claiming the fund. The defendant appeared in the action, and interposed an answer, alleging that the stock so deposited with the trust company by Joseph Richardson was not owned by him at the time of his decease, nor when the same was deposited with the said trust company, and that she, being the owner of the stock, was the owner of the fund, and she demanded judgment that she be decreed to be the owner thereof. The action was referred to a referee, who held that the defendant was entitled to judgment against the plaintiff dismissing the complaint and for the amount of the deposit with the trust company, upon the ground that the stock of the New York, Lackawanna & Western Railway Company was owned by the defendant. When the case came on for trial the defendant was given the affirmative. She introduced in evidence the certificates of stock which were deposited with the said trust company as collateral security for the loan made to Joseph Richardson. They are in the usual form, and certify that "E. Emmett is entitled to one hundred shares of the capital stock of the New York, Lackawanna & Western Railway Company, transferable only on the books of the company in the city of New York, personally or by attorney, upon the surrender of this certificate." Upon the back of each of these certificates was the following indorsement:

"For value received, ——— do hereby sell and assign unto Atlantic Trust Co. ——— shares of the stock, represented by the within certificate, and ——— do hereby constitute and appoint H. Hollingshead attorney, irrevocably, for ———, and in ——— name and stead, to transfer the said shares upon the books of the within-named company, with power one or more attorneys under ——— to appoint for that purpose.

"Witness ——— hand and seal this May 6, 1892.

"In the presence of        E. Emmett.

  "George F. Fish.

  "Mauriac & Bishop."

The defendant swore that the signature to this transfer was not in her handwriting, and that she never authorized the placing of her name upon the back of either of these certificates. Upon this the defendant rested.

The plaintiffs then proved that the plaintiffs' testator purchased and paid for 350 shares of the stock of the New York, Lackawanna & Western Railway Company, the certificates of which stock were issued to him, and were introduced in evidence. These four certificates, representing 350 shares of stock, were issued October 10, 1882, and March 7, 1883, to Joseph Richardson, and it was admitted that at that date Richardson was the owner of the stock, and had paid the consideration therefor. These four certificates were then, on August 22, 1885, surrendered to the railroad company and canceled. Upon the back of each of these certificates there was the following indorsement:

"For value received, ———— do sell and assign unto E. Emmett ————
shares of stock represented by the within certificate, and ———— do hereby
constitute and appoint J. J. Owens attorney, irrevocably, for ————, and in
———— name, and ———— to transfer the said shares upon the books of the
within-named company, with power of one or more attorneys under ————
to appoint for that purpose.

"Witness ———— hand and seal this 21st day of Aug., 1885.

"In the presence of H. W. Nichols.     Joseph Richardson."

It was conceded that the name "Joseph Richardson" upon these
transfers was in the handwriting of the plaintiffs' testator. When
these four certificates were subsequently surrendered to the railroad
company, four other certificates were issued, by which it was certi-
fied that the defendant, "E. Emmett," was entitled to the stock rep-
resented. These four certificates were subsequently surrendered to
the railroad company, purporting to have upon their back a similar
transfer, and a power of attorney purporting to be signed by E. Em-
mett, the defendant, and four other certificates were issued to Mauriac
& Bishop. The defendant, however, swore that she did not sign the
transfers, and never authorized any one to sign her name thereto.
Subsequently these certificates issued to Mauriac & Bishop were sur-
rendered to the railroad company, with an indorsement in the same
form on the back, by which the stock was retransferred to the defend-
ant, Emmett, and new certificates in her name were issued; so that
the whole 350 shares of stock appeared upon the books of the rail-
road company at the time of the testator's death to be the property
of the defendant, Emmett. It further appeared that during this pe-
riod after 1883 the dividends upon this stock were paid quarterly;
that up to July, 1885, the time the stock was transferred to defend-
ant, they were paid by check to the order of Joseph Richardson; and
from that time to the testator's death the dividends were paid direct-
ly to E. Emmett, receipted for by her, and the checks representing
these dividends were indorsed by her. These checks all appear to
have been deposited to the credit of Joseph Richardson's brokers, but
the defendant personally collected these dividend checks, and signed
receipts therefor. It also appeared that during the time that this
stock was in the name of Mauriac & Bishop they gave an order re-
questing the railroad company to pay such dividend to the defendant;
that this order was presented by the defendant, and the dividend re-
ceived by her, and that the checks representing this dividend were
subsequently deposited by Joseph Richardson to his own credit, with
banking houses with whom he kept accounts; that the certificate for
200 shares of this stock was in the possession of the Atlantic Trust
Company, the transfers on the back being apparently indorsed by the
defendant from November 1, 1894, down to the time that they were
sold after the death of Richardson, as collateral security for loans
made to Richardson; and that the signature "E. Emmett," upon the
back of these certificates of stock in question, was in the handwrit-
ing of Richardson, the plaintiffs' testator. The defendant then was
called upon her own behalf, and testified that her parents died when
she was 5 years old, at which time she came to live with Mr. Richard-
son. The original certificates of this stock issued in her name were
then shown to her, and she testified, under objection and exception by

the plaintiffs, that in the autumn of 1885 the certificates were in her possession at the house at which she lived, 110 East Houston street; that at that time the words "E. Emmett" on the back of these certificates were not there; that she collected the dividends upon this stock until some time early in the year 1891, when she went to the office of the railroad company, and was told that there was no dividend there for her; that she informed her cousin Miss Richardson of that fact, and subsequently received from Miss Richardson the order for the dividend, which she took to the company, and then received the dividend; that after receiving all of these checks she gave them to her cousin, Miss Richardson. Miss Richardson was called, and testified that Joseph Richardson had told her two or three days before the first dividend was collected by defendant that he had put stock in the defendant's name; that he had given stock in the New York, Lackawanna & Western Railway Company to the defendant, and that she was to collect the dividend; that at the time the defendant said there was no dividend for her the witness went to her father, and asked him about it, and he said it was all right, that he would give the witness a note, and she (defendant) could go and get her dividend; and that the subsequent orders that were obtained for the dividends were delivered by the plaintiffs' testator to Miss Richardson, who gave them to the defendant The plaintiffs then offered to show that Richardson had transferred in the name of the defendant other shares of stock of considerable value; that after such transfer he kept the original certificates in his own possession, used them as his own for the purpose of borrowing money from time to time, sometimes signing the defendant's name to the transfers indorsed upon the certificates himself, and at other times procuring her signature; and that during all the time this stock was in the defendant's name he received through her the dividends, and generally treated the property as his own, and claimed it, and exercised absolute control over it. This testimony was all objected to by the defendant, and excluded by the referee, to which the plaintiffs excepted.

Upon this evidence the referee found that the stock in question was the property of the defendant. The plaintiffs attack this finding as not sustained by the evidence. That the stock was originally the property of Richardson, purchased by him with his own money, and that he voluntarily transferred it to the defendant many years ago, signing a transfer which recited that for value received he sold and assigned said stock to her, and thereby procured the transfer of the stock to her upon the books of the company, saying to his daughter that he had given the defendant some stock, and that for many years thereafter the defendant personally collected the dividends on the stock and disposed of such dividends, appears without contradiction; and the defendant's right to the stock must depend upon whether these facts are sufficient to sustain a finding of the referee that there was a valid gift of the stock from Richardson to the defendant.

Prima facie, a transfer of stock of a corporation upon its books, whereby the legal title is transferred to another, followed by the dominion of that other person over the stock, would vest the title of the stock in the transferee. The possession of the certificate is cer-

tainly not essential to the vesting of a valid title to the stock in the person to whom it was transferred. It is settled, however, in this state, that the transfer by the owner of stock in a corporation upon the corporation books, standing alone, is not sufficient to make a valid gift. In Jackson v. Railway Co., 88 N. Y. 520, this was established. In that case the court say:

"Delivery is essential to constitute a valid gift. The delivery must be such as to vest the donee with the control and dominion over the property, and to absolutely devest the donor of his dominion and control, and the delivery must be made with the intent to vest the title of the property in the donee. The intent is a necessary element of the transaction. Delivery, without intent to vest the title in the donee, could pass no title to him. Here it may be admitted that the payment of the money by Sharp, the entry of the stock on the books of the company in the name of Youmans, and the delivery to him of the receipt of July 11, 1872, would have been sufficient to constitute a delivery of the stock to Youmans, and sufficient to make a valid gift thereof to him, if such had been the intention of Sharp. But it is clear that such was not the intention. He did not, in any event, intend to vest the title in Youmans for himself. His intention was to create a trust for the benefit of the child, in whom he took the special interest. He did not intend that Youmans should control the shares of stock. He directed that they should be retained by the treasurer of the company, subject to his future control and direction. Youmans drew the dividends by his special direction and consent, for the support of the child."

And in Re Crawford, 113 N. Y. 567, 21 N. E. 692, 5 L. R. A. 71, Judge Peckham says:

"If an owner of shares of stock in a corporation, intending to give them to A., should take the script to the office of the company and surrender it, and receive new script in the name of A., has he by this mere change of title on the books of the company, while retaining the entire possession and control of the script, and without any delivery thereof to A., accomplished a valid executed gift of the ownership of the shares to his intended donee? We should say clearly not."

What is emphasized in these cases is what is undoubtedly the rule, that to prove a gift there must be not only a delivery of the thing given, but such a delivery with the intention to vest the title in the donee. We have in this case undoubtedly a complete delivery of the legal title of the stock. We have also the undisputed evidence that during the whole period of the testator's life, from the time this delivery was completed, he retained possession of the certificates, except at the time that defendant testified that she had possession of them; that he exercised absolute control over the stock; and it does not appear that he ever delivered the possession of the certificates to the donee. But this is not inconsistent with his having made a valid gift of the stock. As was said by the court of appeals in Gannon v. McGuire, 160 N. Y. 481, 55 N. E. 7:

"After the gift is made complete by delivery, it is not necessary that the donee shall retain possession of the property; for it may be redelivered to the donor, as the agent of the donee, for safe-keeping. The mere custody of the property, after a complete gift in præsenti has been made, is subject to explanation, and its chief importance is its bearing upon the question whether there was an executed gift."

The fact that the defendant had at one time the possession of these certificates of stock, while probably competent evidence at the time it was introduced, was not evidence from which an inference

could be drawn that the testator had delivered the stocks to her, as section 829 of the Code expressly precludes the defendant from testifying to any transaction between herself and the testator from which such delivery could be inferred. That was expressly held in Clift v. Moses, 112 N. Y. 434, 20 N. E. 392. It is there said:

"It has been held with general uniformity that the section prohibits, not only direct testimony of the survivor that a personal transaction did or did not take place, and what did or did not occur between the parties, but also every attempt, by indirection, to prove the same thing, as by negativing the doing of a particular thing by any other person than, the deceased, or by disconnecting a particular fact from its surroundings, and permitting the survivor to testify to what on its face may seem an independent fact, when in truth it had its origin in, or directly resulted from, a personal transaction. * * * The statute cannot be evaded by framing a question which, on its face, relates to an independent fact, when it is disclosed by other evidence that the fact had its origin in, and directly resulted from, a personal transaction."

See, also, In re Humfreville, 6 App. Div. 536, 39 N. Y. Supp. 550.

There can therefore be no inference that testator delivered these certificates to the defendant, from her evidence that she had them in her possession. In this case, however, we have the direct evidence that for many years the defendant received the dividends upon this stock, and disposed of the same as she pleased; and, in addition to that, we have the testimony of the testator's daughter that the testator stated to her that he had given this stock to the defendant. The bias shown by this witness upon her cross-examination, her evident desire to assist the defendant against the estate of her father, and her hatred of her father's second wife, was to be considered by the referee in determining the weight to be given to her testimony. From all this testimony, it was, I think, a question of fact whether there had been a valid gift of the stock to the defendant; and I do not think that the finding of the referee that this transfer of stock to the defendant was a valid gift was against the weight of evidence, or that we are justified in reversing that finding of fact. The stock was clearly delivered to the defendant. Whether it was delivered with intent to create a valid gift was a question for the referee to determine.

The only remaining question is as to whether the evidence offered by the plaintiffs as to the transfer by the testator to the defendant of other securities, and of his treatment of them in the same way as his treatment of the stock in question, was properly excluded. ·I have no doubt but that contemporaneous facts and circumstances which would constitute a part of the res gestæ would be competent to show the real intent of the testator at the time of the transfer (Mabie v. Bailey, 95 N. Y. 210; Beaver v. Beaver, 117 N. Y. 421, 22 N. E. 940, 6 L. R. A. 403); but I do not think that any of the facts offered to be proved would come within this rule. The fact that the testator transferred other securities to the defendant and to his daughter would not, standing alone, tend to show that he did not actually give the securities thus transferred; nor would such facts legitimately tend to show the intention of the testator at the time he transferred this particular stock to the defendant. The crucial question was the intent with

which this transfer of stock was made, and I do not think that any evidence that should be considered in determining that question was excluded. On the whole case, I think there was a fair question of fact for the referee, and that his finding on that question is sustained by the evidence, and that no error was committed which would justify a reversal of the judgment.

The judgment should be affirmed, with costs.

O'BRIEN, J., concurs. VAN BRUNT, P. J., and McLAUGHLIN, J., concur in result.