(85 Misc. Rep. 256)

## In re BABCOCK'S ESTATE.

(Surrogate's Court, Lewis County. April 18, 1914.)

1. GIFTS (§ 4*)—"GIFT INTER VIVOS"—REQUISITES.

In order to constitute a gift inter vivos, there must be, on the part of the donor, an intent to give, and the delivery of the thing given, to or for the donee, in pursuance of such intent, and, on the part of the donee, acceptance.

[Ed. Note.—For other cases, see Gifts, Cent. Dig. §§ 3, 17; Dec. Dig. § 4.*

For other definitions, see Words and Phrases, vol. 4, pp. 3091–3093; vol. 8, p. 7671.]

2. GIFTS (§ 17*)—INTER VIVOS—DELIVERY—REQUISITES.

Delivery of a gift may be either actual, symbolical, or constructive, but must be such as to divest the donor of the possession, control, and dominion over the thing given.

[Ed. Note.—For other cases, see Gifts, Cent. Dig. §§ 28–42; Dec. Dig. § 17.*]

3. GIFTS (§ 29*)—INTER VIVOS—DELIVERY—CORPORATE STOCK.

Where the owner of corporate stock transferred a portion thereof on the books of the company to his daughter, who thereafter received the dividends, and for part of the time acted as director of the company, and after her death, intestate and without descendants, the stock, together with other stock issued to her as a stock dividend, was transferred on the books of the company to her husband, who received the dividends thereon and acted as a director of the company until his death, there was a valid gift to the daughter of the shares, the title to which passed to her hus-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

band on her death, even though her father at all times retained possession of the stock certificates.

[Ed. Note.—For other cases, see Gifts, Cent. Dig. § 50; Dec. Dig. § 29.*]

4. DESCENT AND DISTRIBUTION (§ 58*)—RIGHTS OF SURVIVING HUSBAND—PERSONAL PROPERTY.

On the death of a married woman, intestate and leaving no descendant, all her personal property passes to and vests in her surviving husband by virtue of his marital rights and without administration.

[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 146, 160; Dec. Dig. § 58.*]

5. EXECUTORS AND ADMINISTRATORS (§ 85*)—COLLECTION OF ESTATE—PERSONAL PROPERTY—STATUTORY PROCEEDINGS.

Under Code Civ. Proc. § 2710, providing that if the facts admitted by a witness in proceedings by an administrator to recover personal property of the estate show that the witness is in control of the property, to whose immediate possession the administrator is entitled, the surrogate may decree delivery to the administrator, but that if the witness admits having control of the property, but the facts as to the administrator's right are in dispute, proceedings shall end, unless the parties consent to its determination by the surrogate, where the respondents deny that they were the owners or in control of the chattels mentioned in the petition, and there was no consent that the surrogate should determine the title to them, the petition as to such chattels must be dismissed.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 323, 339–358; Dec. Dig. § 85.*]

6. EXECUTORS AND ADMINISTRATORS (§ 85*) — COLLECTION OF ESTATE — PERSONAL PROPERTY—STATUTORY PROCEEDINGS.

In such a petition a description of part of the chattels simply as "household furniture, jewelry, silverware, and wearing apparel" is not sufficient to identify the chattels.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 323, 339–358; Dec. Dig. § 85.*]

Petition by the administrators of the estate of Louis E. Babcock, deceased, to obtain information in relation to certain corporate stock and certain chattels alleged to have been owned by said deceased at the time of his death. Decree entered adjudging that the deceased was the owner of the stock at the time of his death, and dismissing the petition as to the other chattels.

Jones, Townsend & Casey, of Utica, for petitioners.
Purcell, Cullen & Purcell, of Watertown, for respondents.

CARTER, S. This is a proceeding by the administrators of the estate of Louis E. Babcock, deceased, pursuant to section 2707 et seq. of the Code of Civil Procedure, to obtain information in relation to certain stock, and the certificates therefor, in the Gould Paper Company, a corporation, and certain chattels alleged to have been owned by said deceased at the time of his death and now withheld from said administrators, and to obtain possession thereof. On the return of the citation herein respondents filed duly verified answers, which, among other things, in substance denied the allegations of the petition as to said stock and chattels. An examination under oath of the respondents was had.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

It appears from the evidence before me: That on the 11th day of January, 1893, G. H. P. Gould, one of the respondents herein, then being secretary of the Gould Paper Company, a corporation, and the owner of the majority of the stock in said corporation, transferred on the books of the company 20 shares of his said stock, of the par value of $2,000, to the name of his daughter, Lua E. Babcock (then Lua E. Gould), and had issued by said company in her name the certificate for said 20 shares of stock, said certificate being signed by Charles W. Pratt as president, and G. H. P. Gould as secretary, of said company; that on or about August 3, 1907, a stock dividend was declared by said Gould Paper Company, thereby increasing the number of shares of Mrs. Babcock to 127, and on said date the certificate for said 20 shares of stock was canceled and a new certificate issued to her for 127 shares of the capital stock of said company, said certificate being signed by G. H. P. Gould, president, and J. E. Haberer, secretary, of said company; that she received the dividends on said stock standing in her name, as above stated, from January 11, 1893, until her death on the 21st day of June, 1911, except that, at the time of her death, there was still to her credit with said company $535 of said dividends, and which sum was after her death credited on the books of said company to her surviving husband, Louis E. Babcock; that she was elected director of said company on January 21, 1909, on request of said G. H. P. Gould, and so continued until the time of her death, being elected every year; that she died intestate, leaving no descendant, and survived by her said husband, Louis E. Babcock; that on the 21st day of August, 1911, said certificate for said 127 shares of stock standing in the name of Mrs. Babcock was canceled, and the said shares transferred on the books of said company to her surviving husband, Louis E. Babcock, and a certificate for said 127 shares of stock was issued to him, the certificate being signed by said G. H. P. Gould as president and H. P. Gould as secretary; that said 127 shares of stock remained in the name of said Babcock on the books of said company until his death, which occurred on the 24th day of March, 1913; that the dividends declared on said 127 shares of stock were credited on the books of said company to said Babcock, and he drew from same, as and when he pleased, until his death; that on the 8th day of January, 1912, said Babcock was elected director of said Gould Paper Company and continued to be such director until the time of his death; that the entries on the stock book of said company as to said 20 shares and 127 shares state that the transfer of said stock was "absolute"; that the stock book also shows that the 127 shares issued to Louis E. Babcock were in exchange for the 127 shares in the name of Lua E. Babcock; that all the entries in said stock book relating to said stock were made by said G. H. P. Gould; that each of said certificates of stock stated on the face thereof that it was "transferable only on the books of the corporation by the holder hereof in person or by attorney upon the surrender of this certificate properly endorsed"; that said G. H. P. Gould, when each of said certificates of stock was issued, took said certificates of stock and put them in his safe along with his certificates of stock, and they were not actually delivered to any one; and that said 20

shares of stock so issued in the name of Mrs. Babcock (then Lua E. Gould) were paid for by said G. H. P. Gould. There is no conflict in the evidence and no question as to the veracity of the witnesses.

At the close of the evidence it was stipulated by the parties as follows:

"It is hereby consented by the parties hereto that the question of the title to the 127 shares of stock in the Gould Paper Company, Exhibit 3, at the time of the death of Louis E. Babcock, may be determined by the surrogate in this proceeding, pursuant to the provisions of section 2710 of the Code of Civil Procedure."

Since the 20 shares of stock issued in the name of Mrs. Babcock were paid for by Mr. Gould, if she became the owner thereof, or of the 127 shares of stock, it was by gift from her father, Mr. Gould.

It is the contention of the petitioners that Mrs. Babcock was the owner of the 127 shares of stock at the time of her death, and upon her death the said 127 shares of stock passed to her surviving husband, Louis E. Babcock, and were owned by him at the time of his death, while it is contended by the respondent Mr. G. H. P. Gould that he did not give said stock to his daughter, and that he is the owner thereof. Was there a gift of said stock by Mr. Gould to Mrs. Babcock?

[1] In order to constitute a gift, there must be, on the part of the donor, an intent to give, and a delivery of the thing given, to or for the donee, in pursuance of such intent, and, on the part of the donee, acceptance. Beaver v. Beaver, 117 N. Y. 421, 22 N. E. 940, 6 L. R. A. 403, 15 Am. St. Rep. 531.

[2] Delivery may be either actual, symbolical, or constructive, but must be such as to divest the donor of the possession, control, and dominion over the thing given. What constitutes a delivery may depend on the nature and situation of the thing given. Id.

[3] The facts above stated are ample to prove intent to give, delivery and acceptance of the stock, and a complete gift, unless the certificates of stock must be actually delivered to the donee in order to perfect a gift. It is contended by respondents that, since there was no actual delivery of the stock to the donee, there was no gift, and this leads us to the important and determining question in this case, and necessitates the examination of authorities on the question.

The only evidence that the certificates were not delivered is the evidence of Mr. Gould. This evidence was undoubtedly inadmissible under section 829 of the Code; both of these persons to whom he swore delivery was not made being deceased. It is no more permissible under said section to swear that a certain transaction did not occur with a deceased person than it is to swear that a certain transaction did occur with such person. Clift v. Moses, 112 N. Y. 434, 20 N. E. 392; Richardson v. Emmett, 61 App. Div. 205, 212, 70 N. Y. Supp. 546. But, whether admissible under said section or not, this evidence is in the case and must be given due consideration. In determining this question it must be kept constantly in mind that the certificates are not the stock, but the evidence of its ownership. Francis v. N. Y. & B. El. R. R. Co., 108 N. Y. 93, 96, 15 N. E. 192.

In Francis v. New York & Brooklyn Elevated Railway Co., 17 Abb. N. C. 1, the plaintiff, who was the owner of certain stock in said New

York & Brooklyn Railway Company, caused the certificates therefor to be surrendered to the company, and requested it to issue therefor other shares in the names of the plaintiff's three minor children, the eldest of whom was four years old and the youngest two months. The certificates so issued in the names of the children the plaintiff receipted for in the children's names and took same away with him. The plaintiff proved on the trial that he kept the certificates in his safe and said nothing to the children about them, and that he never delivered these certificates to his children. The court said, the opinion being written by Barnard, P. J.:

"The gift of the stock was an absolute one to the plaintiff's children. He took the scrip to himself, and then surrendered it and took scrip back to his three infant children in their own names. This was a complete gift of the stock, so far as to permit the children to so elect when they arrived at the age of consent. The title was changed as to the plaintiff, and, if the children were adults, there would be no question but that the gift was completed. The donor had conveyed a title, and it was absolutely put out of the power of the donor to reclaim it. The scrip was evidence of property only, and was good to evidence it for the donees, even if the same was not delivered to them. The books of the company would give the evidence also, and a transfer there, without any issue of scrip, would be sufficient to change the title."

This case was affirmed in the Court of Appeals (108 N. Y. 93, 15 N. E. 192), but not upon this point, and the question whether there was a gift of the stock was not determined in that court. In discussing the question, however, in the last-mentioned court, Finch, Judge, said:

"That he (plaintiff) should thus take care of the certificates as their (children's) agent, as he had already so acted in signing their receipts, and should say nothing to them about the matter, was a natural consequence of their tender age, and not at all inconsistent with a completed and perfected gift."

In Richardson v. Emmett, 61 App. Div. 205, 70 N. Y. Supp. 546, the headnote, which is perhaps as correct a statement of the case as can be briefly given, is as follows:

"Evidence that the owner of a number of shares of corporate stock voluntarily transferred it upon the books of the corporation to a woman who had lived in his family from childhood, and who at one time thereafter had the certificates for the stock in her possession, that he told his daughter that he had given the woman some stock, and that for many years thereafter the donee personally collected the dividends on the stock and disposed of them is sufficient to sustain a finding that there was a valid gift of the stock, notwithstanding the fact that it appeared that, during the whole period of the testator's life, from the time the stock was transferred until his death, except at the time that the donee had possession thereof, the alleged donor retained possession of the certificates of stock and exercised absolute control over them, and that it did not appear that he ever delivered possession of the certificates to the donee."

The court in the last-mentioned case, at page 211 of 61 App. Div., at page 549 of 70 N. Y. Supp., said:

"Prima facie a transfer of stock of a corporation, upon its books, whereby the legal title is transferred to another, followed by the dominion of that other person over the stock, would vest the title of the stock in the transferee. The possession of the certificate is certainly not essential to the vesting of a valid title to the stock in the person to whom it was transferred."

This case was reversed in 170 N. Y. 412, 63 N. E. 440, but upon another point and not upon the question of the gift of the stock.

In the case of Collins v. Collins, 11 Misc. Rep. 28, 31 N. Y. Supp. 1017, action was brought by the plaintiff to recover possession of a certificate for six shares of railroad stock and the dividends declared thereon since 1884. The facts in the case are as follows: The defendant (donor) some time in December, 1884, being in ill health, which she believed might result in her death, took the plaintiff, her daughter, who was then a child of about 12 years of age, to the office of the Buffalo, New York & Erie Railroad Company, and then and there surrendered a certificate of six shares of stock of said company, of which she was then the owner, and had a new certificate issued in the plaintiff's name for the said stock. The defendant, however, always retained possession of the certificate of stock, and collected the dividends in the name of the plaintiff. Held, that this was a gift causa mortis.

In the case of McElry v. Albany Savings Bank, 8 App. Div. 46, 40 N. Y. Supp. 422, James C. Bell deposited money in the Albany Savings Bank and received from the bank a passbook containing the following entry:

"Albany Savings Bank in account with Mrs. Alida P. Bell, or James C. Bell, her husband, or the survivor of them."

During the lifetime of the said James C. Bell, he retained the actual possession of said passbook, and it never came into that of said Alida until after his death, although she knew of its existence before. Held that, on the death of said James C. Bell, said Alida P. Bell was entitled to demand and receive said money, and that it was not necessary to the validity of the gift under the circumstances that the wife should have possession of the passbook during the lifetime of her husband.

The action entitled Robert's Appeal, 85 Pa. 84, is a very well-considered case and is directly in point. This action was brought in the court of common pleas of the state of Pennsylvania. The facts in the case are as follows:

"The late J. Edgar Thomson, having in his lifetime become the purchaser of 2,000 shares of the stock of the 'Pennsylvania Company,' of the value of $100,000, caused the said shares to be transferred on the books of the company to Miss Charlotte F. Foster, the plaintiff in this case. The certificates were made out in her name, and retained in the possession of Mr. Thomson, where they were found after his death, inclosed in an envelope, which was superscribed in his own handwriting, 'J. Edgar Thomson,' and in one corner of the envelope, also in his handwriting, the words 'Miss C. F. Foster.' The certificates bear date April 1, 1874. Mr. Thomson died May 27, 1874. * * * No dividends were paid upon the stock in the interval elapsing between the date of the transfer of the stock to the plaintiff and the date of Mr. Thomson's decease."

The opinion delivered in the court of common pleas, so far as applicable to the case at bar, was as follows:

"It is to be observed at the outset that here was a complete, perfect, and absolute transfer of the legal title to Miss Foster. The shares were transferred to her on the books of the company, by direction of the owner, and new certificates were taken out in her name. It is not the case, therefore, of an incomplete voluntary gift, or of a merely equitable title to a chose in action, acquired by an assignment which remains in the possession of the assignor. A gift of a chattel is not consummated and perfected until the delivery of the thing promised, and until then the party may revoke his promise. So also

an assignment of a chose in action, * * * where the assignor retains possession of the chose, or of the assignment, passes no title to the assignee or donee; and the reason is that the retention of the chose, or of the assignment, is unmistakable evidence that the assignor, whatever his future intentions might be, has not parted with his property in the thing over which he retains entire control. If Mr. Thomson had suffered these shares to stand in his own name, and had executed to Miss Foster an assignment of them, and had retained that assignment in his own possession until his death, never having delivered it to her, there would seem to be no doubt under the decisions that no property in the shares would have passed to her. And the result would have been the same if he had given her a parol assignment of them without valuable consideration, still retaining the shares in his own name, unless, indeed, circumstances could be shown amounting to a declaration of trust on his part to hold them for her use. But here the gift is complete by the delivery of the thing itself, for transferring the shares to her upon the books of the company is putting her in complete possession of the thing assigned and clothing her with the complete legal title. It stands in the place of a delivery. Such an act performs precisely the office which an actual delivery would perform if it were a chattel. It is as complete a delivery as the nature of the thing will admit of. There can be no clearer evidence of a design to part with the right of property in favor of another than an absolute transfer of the legal title to her for her own use. Retaining in his possession the certificates which are in her name, and which he could not use without her consent, cannot undo or qualify the decisive ownership with which he had invested her by the actual transfer to her on the books of the company. The best evidence of her ownership is the transfer on the books of the company. The certificates were but secondary evidence of her ownership, and only useful for purposes of transfer. They were nothing more than the official declaration by the company of what already appeared on their books. There was no locus pœnitentiæ. He could not have used the certificates, nor could any one have used them except Miss Foster. We are of the opinion, therefore, that the cases relied upon by the defendant's counsel upon the subject of incomplete gifts of chattels and of undelivered assignments of choses in action have no application to the circumstances of the present case, for here was a complete divestiture of his own title and a complete investiture of title in her, so complete that he had no further control over the legal title and no power, without her consent, to undo or disturb it."

The decision in this case was unanimously affirmed by the Supreme Court of the state of Pennsylvania; the Supreme Court saying:

"The decree in this case is to be affirmed for the reasons given by the learned judge in the court below."

In the case of Chauncey Dewey et al., Executors, etc., of C. P. Dewey, Deceased, v. H. J. Barnhouse, decided by the Supreme Court of the state of Kansas and reported in 29 L. R. A. (N. S.) 166, Id. 83 Kan. 12, 109 Pac. 1081, the facts were briefly as follows: Dewey went to a bank and purchased the shares in question and took the certificate therefor in the name of Barnhouse, saying at the time that he wanted to do something for Barnhouse, and the certificate for the shares was delivered to Dewey by the secretary of the association, for which Dewey gave a receipt to the secretary, signed "H. J. Barnhouse, by Dewey." The passbook was delivered to Dewey with the certificate. The secretary explained that for convenience many shareholders left their passbooks with him. Dewey handed the passbook to Barnhouse, who had just come in and was standing near him, and he handed it to the secretary. Dewey kept the certificate. Barnhouse contended that Dewey intended to give the certificate to him, and the acts of Dewey, while in the bank, were such as, under the law, con-

stituted a complete gift, and that Dewey afterwards held the certificate as trustee of Barnhouse. The plaintiffs insist that, to constitute a completed gift, the thing given must be actually delivered by the donor to the donee or some person for him; that, as Dewey never parted with the certificates, there was no delivery, and consequently no gift. On the trial of this case certain questions were submitted to the jury which, with their answers, are as follows:

"Did Charles P. Dewey, while in the bank, determine to give to Barnhouse the stock in controversy? Ans. Yes. Did Charles P. Dewey, at the time of the transaction in the bank, conclude to constitute himself trustee for Barnhouse? Ans. Yes. Did Charles P. Dewey, as donor, deliver the said stock to himself as trustee, receiving it and accepting it for Barnhouse? Ans. Yes."

The court below also made findings which in effect were the same as those found by the jury. Upon appeal the Supreme Court of Kansas said:

"Under these facts, found both by the court and jury, we are unable to say that there is no evidence to support the conclusion that there was a completed gift of the certificate by Dewey to Barnhouse. It was therefore the property of Barnhouse."

The case of Jackson v. Twenty-Third Street Railway Co., 88 N. Y. 520, relied upon by respondents, is clearly distinguishable from the case at bar, for the reason that in that case it was expressly held that there was no intention to give. This decision, however, does tend to uphold the proposition that it is not necessary that a certificate of stock be delivered to the donee in order to transfer title to the stock.

Matter of Crawford, 113 N. Y. 560, 21 N. E. 692, 5 L. R. A. 71, also relied upon by respondents, is also distinguishable from the case at bar, for in that case the possession of the bonds (alleged to have been given) was retained by the donor, the interest thereon collected by him, and the donee knew nothing of the intended gift, and did not, therefore, accept same.

[4] On the death of Lua E. Babcock, intestate and leaving no descendant, all her personal property passed to and vested in her surviving husband, Louis E. Babcock, by virtue of his marital rights and without administration. Robins v. McClure, 100 N. Y. 328, 3 N. E. 663, 53 Am. Rep. 184.

The transferring of the stock by Mr. Gould to his daughter, the issuing of the certificates for same in her name, the drawing of the dividends by her on said stock for more than 18 years, her election as director of the company, followed and corroborated by the acts of Mr. Gould, after her death, in canceling the certificate for the 127 shares of stock in her name, transferring them to the name of Mr. Babcock and issuing a new certificate to him therefor, and the transfer after her death of the accrued dividends on said stock to Mr. Babcock, is very strong evidence that all the interested parties understood that Mrs. Babcock was the owner of the 127 shares of stock at the time of her death, and that it was the intention to transfer said stock to the lawful owner thereof without the annoyance incident to the appointment of an administrator of her estate.

It is but reasonable to suppose that Mr. Gould, on giving the 20 shares of stock to his unmarried daughter, for whom he entertained

great affection, and who presumptively resided with him, should take the certificate for said stock and place it with the certificates for his stock in his safe; this would be the natural thing to do, and not at all inconsistent with a completed and perfected gift, and this is equally true as to the 127 shares of stock.

I am satisfied, from the facts and the law applicable thereto, that there is in this case all the intent, delivery, and acceptance necessary to constitute a completed gift of said stock; and that said G. H. P. Gould gave the said 20 shares of stock to his daughter, Lua E. Gould; and that she was the owner of said 127 shares of stock at the time of her death; and that on her death the title thereto passed to her surviving husband, Louis E. Babcock; that he (the said Louis E. Babcock), was the owner of said 127 shares of stock at the time of his death, and that the title thereto is now in the said administrators of his said estate; and that said Gould had possession of said certificates as agent or trustee of said owners thereof.

[5] In addition to the above-mentioned stock, petitioners seek to obtain information to and possession of certain chattels.

It is provided by section 2710 of the Code of Civil Procedure that:

"If the facts admitted by the witness show that he is in the control of property to whose immediate possession the petitioner is entitled, the surrogate may decree that it be delivered to the petitioner. If the witness admits having the control of the property, but the facts as to the petitioner's right are in dispute, the proceeding shall end, unless the parties consent to its determination by the surrogate, in which case it shall be so determined."

[6] The petitioners have had ample opportunity to examine respondents and obtain information as to the chattels in question. A great part of the chattels in question are described as "household furniture, jewelry, silverware, wearing apparel." These descriptions are not sufficient to identify the chattels in question, and I am unable to see how an order for their delivery could be enforced if made. Camp v. Fraser, 4 Dem. 212; Mapes v. Fleming, 43 Hun, 640; Tilton v. Ormsby, 10 Hun, 7.

The facts admitted by the respondents do not show that they are in control of the above-mentioned chattels; but, on the other hand, their contention is that they are neither the owners nor in control of said chattels, and it is not consented that the surrogate may determine the title to said chattels.

For the reasons above stated this proceeding should be dismissed, except as to said stock.

A decree may be entered adjudging that said Louis E. Babcock was the owner of the 127 shares of stock in the Gould Paper Company at the time of his death, but dismissing the proceeding as to the chattels in question.