In the Matter of the Estate of JAMES COX BRADY, Deceased.

NICHOLAS F. BRADY and Others, Executors of JAMES COX BRADY, Deceased, and Others, Appellants; STATE TAX COMMISSION, Respondent. (Proceeding No. 1.)*

Third Department, January 15, 1930.

* Revg. 133 Misc. 795.

*Neile F. Towner,* for the executors, appellants.

*Edward J. O'Connell,* special guardian for infant parties, appellants.

*Miller, Otis & Farr [Nathan L. Miller, Harold Otis* and *Robert A. Fulwiler, Jr.,* of counsel], for the appellants Helen McMahon Brady, Jane Brady Moseley and James C. Brady, Jr.

*James A. Quinn [Seth T. Cole* of counsel], for the respondent State Tax Commission. ·

HINMAN, J. The decree appealed from determines that the testator, James C. Brady, did not in his lifetime make a gift *inter vivos* of 10,000 shares of stock of Brady Security and Realty Corporation to his wife, Helen McMahon Brady, and his five minor children; that the stock is all a part of decedent's estate.

The verified petition in the proceeding, instituted by the executors, alleged that the decedent had given all his stock to his wife and children in 1923, over four years before his death and prayed that the surrogate determine that the estate has no interest in the stock. All parties in interest were cited. Only the State Tax Department opposed, claiming the stock to be a part of decedent's estate and taxable under the Transfer Tax Law.

The evidence is undisputed and apparently the surrogate has given full credence to it, because in his decree he states " that the evidence, full credence being given thereto, is insufficient to show " gifts *inter vivos.*

This, in substance, is the undisputed testimony: In April, 1923, decedent caused the Brady Security and Realty Corporation to

be incorporated with a capital stock of 10,000 shares without par value. He conveyed to it some land in New Jersey and a contract for the purchase of an office building, in return for which the entire 10,000 shares of stock were issued to him individually in one stock certificate. In September, 1923, he surrendered this certificate and gave instructions to William V. Griffin, his intimate business associate and the president of the corporation, to have seven certificates issued in place of it, one for 1,432 shares to Mr. Brady himself, and the balance in six certificates for 1,428 shares each, one in the name of his wife and one in the name of each of his five minor children. At the suggestion of Mr. Griffin and upon the advice of their attorney, in order to overcome the disability of the children to vote the stock if necessary in the handling of the real estate holdings of the corporation, the instructions were changed and the five certificates for the respective children were issued in each case to " James C. Brady for ———— " (naming the child). Decedent took these seven certificates into his personal possession, kept them for over a week while he was living with his family at his summer home in New Jersey and then handed them back to Mr. Griffin. In handing back the five certificates standing in his name " for " the respective children, he stated that he, Mr. Brady, " had given the certificates to them " and that " these were the children's certificates " and directed Mr. Griffin to place the certificates in the children's safekeeping accounts with the trust company. The certificates were mailed by Griffin to the trust company accompanied by a letter requesting it to place the same " in the safekeeping department of your company." The trust company acknowledged receipt, stating that it was holding them in five separate " trusts," meaning undoubtedly safekeeping accounts. These accounts, like the certificates, stood in Mr. Brady's name " for " the respective children until his death and included other securities belonging to the respective children, the income from which latter securities was placed in the children's accounts. The Brady Security and Realty Corporation has not paid any dividends since it was incorporated. A few days after the children's certificates were deposited with the trust company, decedent handed back to Mr. Griffin the remaining two certificates and said that they were his wife's stock and to take care of them. At that time the certificate for 1,432 shares in Mr. Brady's name had been indorsed by him to his wife and the certificate for 1,428 shares in his wife's name had been indorsed by her in blank. These two certificates were placed in the trust company with her other securities and thenceforth were held in Mr. Brady's individual safekeeping account and vault

at the trust company along with her other securities and his own. The trust company would have delivered these certificates only on order of Mr. Brady, or his authorized agent, Mr. Griffin, according to the testimony of one of its officials. Subsequently to the above-described events, Mr. Brady frequently stated to Mr. Griffin and once to another intimate friend that he had given this stock to his wife and children and had often stated to his wife that the stock made out to him " for " the respective children belonged to them. Subsequent private office records to Mr. Brady — statements of the property belonging to the respective children, asked for by Mr. Brady and presented to him in writing, the headings of which corresponded exactly with the titles of Mr. Brady's five separate safekeeping accounts with the trust company — not only include the stock standing in his name " for " the respective children along with other securities undisputedly belonging to the children but in one such report there is a notation " Gift J. C. B." in setting up the stock in question in the account of each child. Just before the marriage of his daughter Jane in June, 1927, who had recently become of age, decedent wrote to her a letter in which he refers to the safekeeping account in his name for her in the trust company " established by me for your account some time ago," and says: " I have given the account the following securities: * * * 1,428 shares Brady Security & Realty Corp. * * * The following amount is due me, for cash advanced account of purchase: $4,000 Kansas City R. R. Co. 7's, $2,400."

The learned surrogate finds that this testimony, " full credence being given thereto," is insufficient to establish gifts inter vivos in whole or in part. He considered that he was bound by the authorities on the subject to hold that all the stock continued to belong to Mr. Brady and is a part of his estate. He says: " There is no direct proof in this proceeding that a delivery was made and there is a total absence of any evidence that either the wife or any of decedent's children ever exercised any dominion over these securities whatsoever." He further says: " The evidence must show a delivery with an intent to divest title and possession of the donor, and must be inconsistent with any other intention. * * * In the present proceeding such evidence is entirely lacking. * * * Other than the statements made by decedent there are no circumstances here that would warrant a finding that there was such a delivery as would invest the donee with control and dominion over these securities and to absolutely divest donor of his dominion and control."

It is not uncommon for a donee to intrust the donor with possession of the thing given, particularly between child and father or

wife and husband. Direct evidence of consummation of the gift and of circumstances explaining the donor's continued possession, through testimony of an eye-witness competent to testify, is frequently unobtainable. Yet gifts under such circumstances are upheld upon the evidence of delivery found in the decedent's admissions of the gift or of the donee's title. (*Miller* v. *Silverman*, 247 N. Y. 447; *Govin* v. *de Miranda*, 140 id. 474; *Martin* v. *Funk*, 75 id. 137; *Grangiac* v. *Arden*, 10 Johns. 293; *Crouse* v. *Judson*, 41 Misc. 338.) It is not necessary that the donee should retain the property in his possession after delivery to him. The donor may retain possession if he does so as agent of the donee for safekeeping. (28 C. J. 641; *Gannon* v. *McGuire*, 160 N. Y. 476; *Matter of Babcock*, 85 Misc. 256; affd., 169 App. Div. 903; *Crouse* v. *Judson*, 41 Misc. 338.) Delivery to a third person may be regarded as delivery to the donee. (*De Caumont* v. *Bogert*, 36 Hun, 382.) "The donor may constitute himself a trustee for the donee, and in such case no further delivery is necessary." (28 C. J. 642; *Taylor* v. *Kelly*, 5 Hun, 115; *Martin* v. *Funk*, 75 N. Y. 134.) "In regard to personal property, the declaration of trust may be made either in writing or by parol." (Id.) "No particular form of words is necessary to constitute a trust, while the act or words relied upon must be unequivocal, implying that the person holds the property as trustee for another." (*Martin* v. *Funk*, 75 N. Y. 134, 141.) Even "reservation by the donor of certain proprietary rights in the subject of the gift, such as the use and enjoyment thereof, is not necessarily inconsistent with the absolute character of the gift, and gifts accompanied by such reservations have been repeatedly upheld." (28 C. J. 647.) The situation of the parties along with the subject-matter of the gift, is a potent factor to be considered. Thornton on Gifts (§ 175) says: "The possession of the parent, the natural guardian of his infant child, who makes a present to such child and retains the possession of the article given, is the possession of the donee, or at least such possession is not inconsistent with such donee's title. In such an instance there is no presumption of fraud. As the parent is entitled to the possession of his minor child's property, the law does not require him to make a formal delivery to the child, when he must at once repossess himself of the property given."

We do not see what other necessary act the donor could have done to make the transfer and delivery more complete than it was, considering the situation of the parties and the possible necessities of the corporation, the entire capital stock of which was involved in the transaction. Mr. Griffin testified: "Mr. Brady told me that he had called the children together, explained the nature of the Brady

Security Company, what it meant, and given the securities to the children and to Mrs. Brady. They gave them back to him to be put in their account." The certificates in his name for the children, although unindorsed by him, " were susceptible of transfer by a manual delivery with intention to give." (*Miller* v. *Silverman*, 247 N. Y. 447, 450.) He indorsed one certificate over to his wife. The other was issued in her name. It was the practice of Mrs. Brady to keep her other securities in his vault in the trust company. It was natural that he should deposit the children's certificates in the safekeeping of the trust company in connection with accounts which he had set up separately for them which included other securities belonging to them. He was their agent with their consent or else he was a self-constituted trustee for them and all of his acts are consistent with a complete transfer of title. He retained control of the securities and of their custody but he did so as their agent or trustee and there is no presumption that he would abuse his control for his own purposes. The presumption is to the contrary. His reservation of the right to vote the stock for his children to avoid voting complications was not inconsistent with the absolute character of the gift. In fact, he acted merely as their agent or trustee and he would naturally keep the certificates in his own name for that purpose, either as general guardian or as their agent or as self-constituted trustee for them. It was immaterial how he described himself. Since this was a gift from himself it was not unnatural or suspicious that he did not have the stock issued to himself in his capacity of general guardian. We do not even know when he was appointed general guardian nor the origin of the property coming to them which occasioned his appointment. Convenience or necessities of accounting as general guardian would justify his action.

Even the executors of decedent's estate are satisfied that the property does not belong to the estate and so allege in the petition. Mr. Griffin is one of the executors. He was intimately acquainted with the history of the transactions and as executor he may easily have acquired further knowledge which would enable him to form an opinion and to make an admission. Admissions by executors made while in line of duty are admissible and should have due weight. (*Breese* v. *Graves*, 67 App. Div. 327; *Crouse* v. *Judson*, 41 Misc. 341.) The evidence is clear and convincing that gifts *inter vivos* were intended and were consummated. The surrogate has not rejected the undisputed testimony. We see no reason to reject any of it. We see nothing in the facts and circumstances which justify us in drawing implications in conflict with the positive testimony. The only party opposing is the State Tax

Commission. Naturally that Commission is interested from the viewpoint of the collection of the proper inheritance tax from the estate and the purpose of the proceeding is to obtain an adjudication bearing on that subject. At the hearing before the surrogate the claim was made by the Tax Department that Mr. Brady created a trust for the benefit of each of the members of his family " which was to take effect and become operative only upon the death of James C. Brady." No evidence was presented to support the claim and no such point is raised by respondent on this appeal. As against any surmise that one of Mr. Brady's motives may have been to avoid inheritance taxation, all of the evidence is to the effect that gifts were completed in 1923 to take effect at that time and if they had not been Mr. Brady would not have accomplished this object. Under the power conferred by section 309 of the Surrogate's Court Act, we hold and find upon the law and the facts that in September, 1923, James Cox Brady made a gift *inter vivos* of the 10,000 shares of stock of the Brady Security and Realty Corporation to his wife and his five children and that said shares of stock are not part of his estate.

The decree of the surrogate should be reversed on the law and the facts, with costs of this appeal to all parties filing briefs, payable out of the estate, and matter remitted to the Surrogate's Court with directions to enter a decree in accordance with this opinion, with costs in Surrogate's Court in the discretion of the surrogate.

VAN KIRK, P. J., WHITMYER, HILL and HASBROUCK, JJ., concur.

Decree reversed on the law and facts, with costs of this appeal to all parties filing briefs, payable out of the estate, and matter remitted to Surrogate's Court with directions to enter a decree in accordance with opinion, with costs in Surrogate's Court in the discretion of the surrogate.

This court finds that in September, 1923, James Cox Brady made a gift *inter vivos* of the 10,000 shares of the stock of the Brady Security and Realty Corporation to his wife and his five children, severally, and that said shares of stock are not part of his estate.

Findings and order to be settled before Mr. Justice HINMAN on five days' notice.