In the Matter of the Estate of MARGARET H. DUNNE, Deceased.

Surrogate's Court, Kings County, March 24, 1930.

*George J. Lesser*, for the executors.

*McCabe & Hickey*, for Patrick H. Dunne.

WINGATE, S. The point presented for determination in this discovery proceeding concerns the effect of the execution and delivery of an assignment of two bonds and mortgages upon real property without accompanying delivery of such original instruments.

The facts shown upon the hearings were that the decedent owned a bond and mortgage of one Mary A. Ryan, dated April 1, 1905, on premises 763 Madison street, Brooklyn, in the sum of $2,800, and another of Frank J. Cusack, dated January 7, 1914, on 63 Dean street, Brooklyn, in the sum of $4,500, the original instruments being in the hands of her attorneys. On July 31, 1916, she went with one of her sons, Patrick J. Dunne, to the offices of McCabe & Hickey, attorneys, at which time assignments to him of these bonds and mortgages, in usual form, were prepared on her direction.

She executed and acknowledged them and personally gave them to her son telling him to " keep them." They were never subsequently out of his possession. They were duly recorded on March 2, 1927. Three days later, on March 5, 1927, the mother executed her will which has been admitted to probate in this court, and on March 13, 1927, she died. During the interval the son collected the interest, receipting for it in his mother's name. On January 17, 1924, the mother personally executed an extension agreement of the Cusack mortgage to January 7, 1930. The other fell due on April 1, 1908, and has since been continued as an open obligation.

Although the assignee, at the time of the delivery of the assignments, actually paid his mother two dollars, no contention is made that the transaction was more than a gift, so the question for determination is whether a completed gift *causa mortis* or *in præsenti* may properly be held to have been effectuated.

On fundamental principles, no gift *causa mortis* can be spelled out of the transaction, since there is no evidence that the mother, at the time of executing the assignments, was suffering from any disease or was apprehensive of death from any impending perils, and as a matter of fact she did not die until almost eleven years later. (*Augsbury* v. *Shurtliff*, 180 N. Y. 138, 143; *Ridden* v. *Thrall*, 125 id. 572, 579.) The question, therefore, reduces itself to one of whether the facts shown constitute a valid gift *inter vivos*.

The essentials of such a gift are clearly stated in the leading case of *Beaver* v. *Beaver* (117 N. Y. 421, at p. 428): " There must be on the part of the donor an intent to give, and a delivery of the thing given, to or for the donee, in pursuance of such intent, and on the part of the donee, acceptance. The subject of the gift may be chattels, choses in action, or any form of personal property, and what constitutes a delivery may depend on the nature and situation of the thing given. The delivery may be symbolical or actual, that is, by actually transferring the manual custody of the chattel to the donee, or giving to him the symbol which represents possession. In case of bonds, notes or choses in action, the delivery of the instrument which represents the debt is a gift of the debt, if that is the intention; * * *. The acceptance, also, may be implied where the gift, otherwise complete, is beneficial to the donee." To like effect, see *Matter of Babcock* (85 Misc. 256; affd., 169 App. Div. 903; affd., 216 N. Y. 717).

Since on the foregoing citation acceptance by the alleged donee is implied, and since the intent of the alleged donor is presumed to be the natural legal effect of her acts, the crux of the case narrows itself to the legal effect of the execution, acknowledgment and delivery of an assignment of a bond and mortgage without more.

This question has been determined beyond question by the Court of Appeals in *Davin* v. *Isman* (228 N. Y. 1). The question there concerned the validity of an unacknowledged assignment unaccompanied by demand for, or delivery of, the bond or mortgage. The court says (beginning at p. 7): " Mr. Lilly did not acknowledge before an officer authorized to take the acknowledgment of the instrument in question, nevertheless the instrument executed by him was sufficient to transfer all interest and title which he had as mortgagee to the bond and mortgage in question to the assignee named in the assignment (*Fryer* v. *Rockefeller*, 63 N. Y. 268), and by such assignment the assignee was clothed with all the rights theretofore conferred upon the assignor mortgagee to enforce the bond and mortgage. (*Westbrook* v. *Gleason*, 79 N. Y. 23, 29.) "

Again (at p. 8): " The assignment passed title to the bond and mortgage as against Mr. Lilly, his representatives and the mortgagor as well as all other persons who were not affected by reason of an absence of the record of the same. A delivery of the bond and mortgage to defendant was not essential to vest title to the same in defendant. Neither was she required to assert ownership of the same by demanding possession thereof from plaintiffs."

This determination is conclusive of the case at bar which is even stronger by reason of the fact that in consequence of the acknowledgments of the assignments, the assignee was vested at once, under the statute, with the power to record his instruments and make them good against all the world.

The facts that the assignee subsequently collected and receipted for interest in the name of the assignor and that she purported to extend the term of one of the mortgages are legally immaterial. At best they were equivocal acts capable of several explanations as to motive. In no event can they be held to vary the vested legal rights of the assignee resulting from the execution and delivery of the assignments. It is probable that there was a private understanding between the mother and son that whereas the latter was to be the actual owner of the securities, she should enjoy the fruits thereof during her life, which arrangement would partake of the essence of a return gift from him to her. Since such an arrangement would amount to a preference for this son over the others, both may have preferred the arrangement to remain secret for the time for reasons of family harmony. Whereas this is pure conjecture, it is a natural deduction from the acts of the parties.

In any event it must be held that the transaction consummated on July 31, 1916, embraced every element of a valid gift of these bonds and mortgages by the decedent to the respondent.

Proceed accordingly.