pancy. Furthermore, it is not a question of title, right of entry, or right of possession. The object of all the statutes bearing on this. subject is to preserve the public peace and to prevent persons from asserting their rights, real or supposed, to enter upon and take possession, or, under certain circumstances, to retain possession, of real property by force or violence. A mere trespass, not accompanied by force, violence, or intimidation by menaces, gestures, or threats to obtain the possession of real property, is insufficient to make out a forcible entry; and, as to forcible detainer, mere words are insufficient. Personal violence must be shown.

Whatever the facts in the case involved may have been as to threats,. menaces, or physical interference with each other by the parties concerned is not material. A study of said section 2034, and of the various decisions of the courts bearing on forcible entry and detainer, has. convinced me that the section applies to forcible entry on, and taking possession or keeping possession of, real property only, and not to trespass involving merely a taking or retaining possession of chattels. It may be that these defendants could be successfully proceeded against under section 43 or section 720 of our Penal Law, or for assault in the third degree, or under some city ordinance; but, as I read the law, they cannot be convicted under said section 2034.

Therefore, whatever the equities may be between these parties, and however reprehensible the conduct of any of them, these defendants have the right not to be convicted of a crime which they have not committed; and therefore the judgment of the court below must be reversed, and the fines remitted.

Judgment reversed.

---

(74 Misc. Rep. 315.)

### In re GOUGH.

(Surrogate's Court, Kings County. November, 1911.)

1. GIFTS (§ 30*)—DEPOSITS IN TRUST.

 Where money is deposited in the name of a husband in trust for his. wife, some of which belonged to him and some to her, and at the time of the deposit she states that she gives her money then deposited to him,. and during part of her life and at her death she had the bank book and. kept it in a box of which he had no key, and, before her death, she gives him the book to draw money to pay taxes, after which he returns it to. her with the money he has drawn and she instructs her daughter to give the book to him when she dies, a clear intention on her part appears to retain control of the fund for life, and that he should have so much of it as might remain at her death.

 [Ed. Note.—For other cases, see Gifts, Cent. Dig. §§ 52–57, 65; Dec. Dig. § 30.*]

2. WILLS (§ 566*)—CONSTRUCTION—DESCRIPTION OF PROPERTY.

 Where a husband and wife have a bank deposit in his name in trust for her, and she also has a deposit in her own name, a legacy by her of $800 deposited in the bank is payable from the money deposited in her own name.

 [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1238½, 1239·; Dec. Dig. § 566.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

**3. GIFTS (§ 30*)—VALIDITY—TIME OF TAKING EFFECT.**

    A bank deposit by a married woman in favor of one whom she named as her executor in trust for herself, together with a provision in her will giving the amount of the deposit to the executor for his services in her lifetime, and in settling up her estate, indicates her intention to vest the fund in him, with postponement of its enjoyment during her life, and his death prior to hers does not extinguish his right in the fund, but it passes to his personal representatives, and the right cannot be diminished by proof that the value of his services to her was less than the deposit.

    [Ed. Note.—For other cases, see Gifts, Cent. Dig. §§ 52–57, 65; Dec. Dig. § 30.*]

    Judicial settlement of the account of Annie Gough, as executrix of the last will and testament of Annie Neumann, deceased. Decree entered.

    John C. Kinkel, for executrix.

    Charles H. Kelby, for public administrator as administrator of the estate of Ludwig Neumann, deceased.

    Edward G. Nelson, for Annie Gough, as administratrix of estate of Carl Vollmann, deceased.

    Rudolph Schroeder (Edward I. Taylor, of counsel), for Johann Petersen, residuary legatee.

    KETCHAM, S. The question is presented whether the balance remaining in a savings bank account belongs to the estate of the decedent, Annie Neumann, or to the estate of Ludwig Neumann, her husband.

    This account was opened on January 5, 1898. The depositor was named as "Ludwig Neumann, in trust for Annie Neumann." Deposits in this account were: January 5, 1898, $25; June 24, 1898, $25; July 1, 1898, $500. Withdrawals were made as follows: January 12, 1909, $100; August 31, 1909, $125. On January 1, 1911, interest upon the account was $340.24 and the principal then remaining was $325. The husband survived the wife, and then died, on September 13, 1909.

    [1] The evidence requires the finding that the two sums of $25 deposited in the account belonged to the husband. This conclusion is based upon the fact of the deposit and the absence of any evidence to overcome the presumption that in each case the sum deposited belonged to the depositor.

    It is supported by the following testimony of the decedent's stepdaughter, whether the same applied to one or the other of these two small deposits:

    "Q. Did she (the decedent) make any statement as to what that deposit of $25 was? A. That was his own money. Q. Who said that? A. Both him and her."

    The $500 belonged to the wife originally, and it is uncontradicted that she gave that sum to the husband, and that they both went together and put it in the bank. For part of her life and at her death the wife kept the bank book. She certainly had possession of it on

---

January 12, 1909, six months before she died. For an unknown period immediately preceding her death she kept the bank book in a tin box to which there were keys, which were never in the possession of the husband, but were in the hands of a third person. On January 12, 1909, the decedent gave her husband the book, and told him to draw $100 from the account, as she wanted it. She then said that she needed the money for the taxes. He drew the money, and gave her the book and the money both. The stepdaughter testifies that her mother told her when she died to hand him (the husband) the bank book just as soon as she died.

The rule that an irrevocable trust arises when a deposit is made by one in form in trust for another and the bank book is delivered to the apparent beneficiary without any qualifying circumstances does not apply. This rule relates only to cases where the moneys deposited originally belonged to the apparent trustee. It derives its sanction from the inferences which must follow when a person yields dominion over his own to another. Here a small part of the account was contributed by the husband, while the wife, in contributing the remainder, said she gave the same to him. The trust which accompanied this so-called gift would be reduced to an absurdity if construed to mean that the gift which took place at the moment of instituting the trust was such that the husband could not in any imaginable event take any advantage by the gift. It cannot be that the wife said, "I give you this $500 in such a way that I shall have the full right to its use and consumption so long as I live, and my estate shall have what is left of it at my death."

Any form of gift, or agreement to give, to the husband forbids the suggestion that the form of the account was adopted as a device or convenience in the wife's conduct of the deposit. The clear intention was that the husband should take full ownership and enjoyment of the $500, with only such limitations as may be deduced from the form of the deposit and of the gift. The trust or arrangement should be given such scope as is consistent with the fact of gift. Unless the husband was intended to take the balance upon the wife's death, there could never be any enjoyment by him of his gift. Hence the understanding was that the wife should enjoy, and, if she chose, consume the fund during her life, and that in the meantime the enjoyment of the gift by the husband should be so modified and abated as to permit of the wife's enjoyment of the fund; but that, upon her death, the gift should become consummate as to any unconsumed remainder. The words "trust" and "gift" are used, not in their legal sense, but with the meaning which the parties adopted. By the use of these words they intended and agreed that the account should be in trust to fulfill the purposes above stated, viz., that the wife should have the control of the fund for life, and the husband should have so much of it as should be left at her death. This interpretation is confirmed by the wife's treatment of the pending transaction when she came to die. She then told her stepdaughter to hand the husband this bank book as soon as she died. Declarations by either party to the deposit made while the deposit was maintained are part of the res gestæ, and

tend to characterize the existing transaction. The balance remaining in the account should be delivered to the husband's estate.

[2] The will contains these words:

"I give, devise and bequeath to my husband, Ludwig Neumann, eight hundred dollars, which is in a bank deposited therein or will be."

Whether this legacy was general, specific, or demonstrative, it is payable. It was doubtless a demonstrative gift, and the source demonstrated for its payment was any bank in which the testatrix to her own knowledge then had an account. There was an account then standing in her name in which at her death there was the sum of $2,706.88. From this sum the legacy should be paid. There was a deposit in a savings bank of moneys belonging to the testatrix to the amount of $500. The form of the deposit was: "Carl Vollmann in trust for Annie Neumann." The deposit was made on May 14, 1907, and there were no additions to or withdrawals from the account during the life of the testatrix. Carl Vollmann died on February 7, 1908. This is the true date, although the time is erroneously given in the testimony as February, 1907.

[3] The will of the testatrix appointed Carl Vollmann as executor and contained the following provision:

"I give, devise and bequeath the money deposited in the Germania Savings Bank in Kings County, N. Y., whatever the amount therein is or may—unto my friend, Carl Vollmann, as and for his services rendered to me in my lifetime, and for his commissions and services in settling up this my estate."

It is claimed in behalf of the representative of Carl Vollmann that the legacy to him did not lapse upon his death before that of the testatrix, since it was given to discharge an obligation, either legal or moral; and, further, that, even if there were a lapse, the expression of the will, though it has lost dispositive force, remains as the declaration of the testatrix that her intention was to vest the fund in Vollmann with postponement of its enjoyment during her own life.

While in its testamentary effect the will speaks as of the time of testatrix's death, it speaks as of the time of its execution when it refers to existing things. Rogers v. Rogers, 153 N. Y. 347, 47 N. E. 452. It was said by Chief Judge Church, in a case not now recalled by name, that:

"We must assume the position of the testator, and know what he knew and see what he saw, and then declare what he intended."

By words which serve as her declaration, even though they may fail of testamentary efficacy, the testatrix said, six months after her deposit was made, that she wanted the amount of such deposit and any additions thereto to be paid to Carl Vollmann upon her death. She declared the ground of such wish to be the services which he had rendered to her and which he might render to her estate. Such expressions, whether found in a will or in any other solemn form, when made in full knowledge of the account then pending justify the finding that the deposit, though in form a trust for the benefit of herself and her estate was, in her contemplation, a trust for her benefit during her life, with a vested right thereto in Carl Vollmann to enjoy the same upon her death. This right, if it existed, was trans-

mitted to the representatives of Mr. Vollmann. This view receives some support from the fact that the testatrix had previously made a like arrangement for her husband's benefit under a like deposit.

It is clear that a legacy given in discharge of a legal obligation is not a mere bounty, but is a recognition of a duty, and, as such, does not lapse upon the death of the legatee (Cole v. Niles, 3 Hun, 326, affirmed 62 N. Y. 636; Redf. Sur. [7th Ed.] § 768; Stevens v. King, 1904, 2 Ch. Div. 30; 3 Pom. Eq. Juris. [3d Ed.] § 1144, note 2 and note A); nor do we approach doubtful ground when the same rule is applied to a legacy made in recognition of a merely moral duty. In Stevens v. King, supra, the honorable court said:

"The doctrine that a legacy lapses by the death of the legatee in the testator's lifetime means, I take it, that the whole object of the testator in giving the legacy has failed by reason of the legatee's death. But that must depend on the question what the testator's object was. I think that the cases of Williamson v. Naylor, 3 Y. & C. Ex. 280, Phillips v. Phillips, 3 Hare, 281, 64 R. I. 296, and In re Sowerby's Trust, 2 K. & J. 630, have established the rule that, if the court finds, upon the construction of the will, that the testator clearly intended not to give a mere bounty to the legatee, but to discharge what he regarded as a moral obligation, whether it was legally binding or not, and if that obligation still exists at the testator's death, there is no necessary failure of the testator's object merely because the legatee dies in his lifetime; and therefore death in such a case does not cause a lapse."

In Pomeroy's Equity Jurisprudence (section 1144, footnote to 3d Ed.) the author adopts this case as the basis for the following statement of the rule:

"Where the intention of the testator is not merely bounty to the legatee, but to discharge a moral obligation recognized by the testator, the legacy does not lapse."

While proof was given of the value of the services which might have been rendered by Mr. Vollmann after he had become executor, there is no ground for subtracting such value from the amount of the legacy. The gift was entire, and must fail or prevail wholly. There can be no inquiry as to the quantum meruit when services, past and future, certain and contingent, have been appraised and liquidated by the testatrix as of a value equal to her gift. Either by the express provision of her will or by the agreement which surrounded the deposit, the decree of distribution must direct the payment to the administratrix of Carl Vollmann of the money deposited in the Germania Savings Bank at the time of the decedent's death.

The account should be settled accordingly.

Decreed accordingly.