In the Matter of the Estate of ELIZA SHARDLOW, Deceased.

Surrogate's Court, New York County, January 8, 1940.

*Walter Jeffreys Carlin* [*Pallister H. Feely* on the brief], for the executor.

*Wasserman & Erenstoft*, for Samuel Fischler, assignee of a legatee under the will of decedent.

*McKercher & Link*, for the New York Medical College, the Flower Hospital and the Fifth Avenue Hospital.

*Sidney A. Kirschner* and *William A. Kirk*, for Elsa Herbert Whiteman, individually, and as executrix, etc., of Dr. James Leonard Whiteman, deceased, objector.

FOLEY, S. The question presented for determination in this accounting proceeding is whether or not any or all of three legacies in the respective amounts of $20,000, $20,000 and $1,000, bequeathed by the testatrix to Dr. James Leonard Whiteman, a stranger to her blood, lapsed by his death in her lifetime.

The will divides the legacies bequeathed by the testatrix into three separate and distinct groups or parts. Within the first group, under paragraphs second to twelfth, inclusive, are certain pecuniary legacies in varying amounts to charities, relatives and friends. Under paragraph ninth of this group there is a bequest to Dr. Whiteman in the following language: "I give and bequeath to Dr. James Leonard Whiteman, 221 West 78th Street, the sum of Twenty thousand dollars ($20,000), as an expression of the appreciation for the valued service covering many years." The second group of legacies is also to relatives and friends of the testatrix and to a charitable corporation. They are contained in paragraph thirteenth and are made payable out of her residuary estate after payment of the first group of legacies. Some of these legatees are the same persons named as legatees in the first group. In the second group she bequeathed an additional legacy to Dr. Whiteman as follows: "To James Leonard Whiteman, the sum of Twenty thousand dollars ($20,000), one half of which I give in remembrance of my brother, Joseph Shardlow, under whose Will I received the same," and in the same group a third legacy reading: "To Dr. James Leonard Whiteman for his philanthropic work, the sum of One thousand dollars ($1,000)." In the third disposition, by paragraph fifteenth, the testatrix gave all the rest, residue and remainder of her estate, including any lapsed legacies, to a nephew.

The situation here presented is somewhat novel although not

unprecedented. In the ordinary case, a legacy to a person unrelated by blood to a testator lapses by his death before the testator. However, there is sufficient authority in this and other jurisdictions for the rule that where a legacy is given in discharge of a legal or even a moral obligation and not as a mere bounty to the legatee, it will survive the latter's death before the testator and will not lapse. (*Cole* v. *Niles*, 3 Hun, 326; affd., 62 N. Y. 636; *Matter of Gough*, 74 Misc. 315; *Ward* v. *Bush*, 59 N. J. Eq. 144; 45 A. 534; *Stevens* v. *King*, [1904] 2 Ch. Div. 30.)

The test, therefore, is, do any or all of the legacies bequeathed to Dr. Whiteman come within the latter rule? Were they given for a valuable consideration?

As to the legacies of $20,000 and $1,000, respectively, bequeathed to Dr. Whiteman under paragraph thirteenth of the will, I hold that they were intended by the testatrix as mere bounties and, therefore, lapsed by reason of his death before hers. The bequest, however, of $20,000 to him under paragraph ninth, I find was made for valuable consideration and in discharge of a legal and moral obligation of the testatrix and not as a mere bounty or benefaction. It, therefore, did not lapse but passed by his death to his personal representative, his widow, as executrix.

The testatrix executed her last will and testament on September 7, 1935, at the age of eighty-seven years. For a period approximating thirty years prior thereto, Dr. Whiteman had rendered services to her and had treated her as her personal physician. At the date of the will he was about sixty years of age. Shortly before that time he had suffered a severe stroke of apoplexy and was in serious mental and physical condition. The testatrix was aware of that condition. He died on April 4, 1936. The testatrix survived him and died on January 11, 1938.

The language of the gift under paragraph ninth creates the presumption that a valuable consideration passed from Dr. Whiteman to the testatrix. Dr. Whiteman had rendered valuable services to the testatrix for many years. The testatrix herself has so stated. Though quite advanced in years she had prepared a draft of her will, in her own handwriting, with meticulous and painstaking care. It showed that she clearly understood the nature and effect of her bequests and particularly that in the distribution of her estate the legacies in the first group would be preferred over those in the second group. Dr. Whiteman's legacy " for the valued service covering many years " was within the preferred group. The draftsman of the typewritten form of the will, which has been admitted to probate, has embodied in it the exact language used by the testatrix in the draft of the will written by her own hand.

The words " as an expression of the appreciation for the valued service covering many years " were words of her own choosing. All of the services of the doctor had been rendered in the past.  For some of them he had been paid, at least to some extent.  A receipt and a letter offered in evidence, each dated approximately two months before the execution of the will, indicated payment of the sum of forty-five dollars to the physician for professional services rendered, but the nature and extent of the services performed by him during the long period before that date, and the total amount of compensation paid to him by the testatrix have not been shown. Nevertheless, the language of the will plainly imports an intention on the part of the testatrix to give further compensation for his services, in excess of those already paid for, and to thereby discharge an obligation for which she deemed herself liable.

In choosing the words " appreciation for the valued service," she has indicated that she was deeply and keenly sensible of their value or worth.  Funk & Wagnalls New Standard Dictionary defines " appreciation " as " true or adequate apprehension or estimation as to qualities, merit or value."  Webster's New International Dictionary defines it as a " sensitive awareness or perception of worth or value."  " To appreciate " means " to be fully aware of or alive to the value, importance or worth of; to esteem adequately or highly."  The testatrix has acknowledged the high value or worth of the services of her physician, not only by the use of the word " appreciation " but also by the word " valued " which amplifies the word " service."  In her own estimation she has fixed their value at the sum of $20,000.  That fixation of value may not be questioned.  It is equivalent to an admission by her that she owed the doctor that sum and that he was a creditor of hers to that extent.  The same probative force must be given to it as is credited ordinarily to an admission of an indebtedness or obligation in some form of writing left by a decedent.  It has the same effect as has " an entry or memorandum made by a deceased person against his interest, found in his books or papers " which has been held to be " generally admissible against his estate in favor of a party seeking to establish the fact stated.  They are presumably truthful." (*Matter of Gallagher*, 153 N. Y. 364.)

In cases involving gifts or declarations of trusts, the courts have recognized the effect of a written admission by the decedent. Typical of these cases are the decisions of the Court of Appeals in *Govin* v. *de Miranda* (140 N. Y. 474); *Miller* v. *Silverman* (247 id. 447); *Matter of Brown* (252 id. 366); *Matter of Brady* (254 id. 590, affg. 228 App. Div. 56) and *Mutual Life Ins. Co.* v. *Holley* (280 N. Y. 330).  Such admissions constitute strong evidence in the case of

the making of a gift and even by themselves are sufficient to dispense with other proof of the essential elements of intent and delivery of the property given. In some of these cases the admissions took the form of mere notations on an envelope or a scrap of paper. In the present proceeding, therefore, to a greater extent, an admission contained in holographic instructions and embodied in a will formally executed is entitled to even greater weight. As the trier of the facts, and by the application of the rule stated in the authorities just cited, I hold that the language of the testatrix furnishes sufficient evidence of valid consideration and a recognition of an admitted liability by the testatrix.

It has always been held that where a legacy is given for a valuable consideration such as the relinquishment of some subsisting right or interest, as to a creditor in satisfaction of a debt, or to a wife in lieu of dower, it is entitled to priority over general legacies which are mere bounties, for in such case the legatee stands in the situation of a purchaser and not a mere volunteer, and this is so even though the value of the legacy greatly exceeds the value of the right relinquished. (*Matter of Cameron*, 278 N. Y. 352, 358; *Matter of Woodbury*, 40 Misc. 143, 148; *Matter of McKay*, 5 id. 123, 126; 2 Jessup-Redfield, Law and Practice in the Surrogates' Courts, [3d ed.] p. 1903.) As applied to legacies for services rendered, our courts have recognized this rule in *Matter of Schaaf* (120 Misc. 292), where a bequest for $1,000 to the attorney of the decedent and of $300 to a friend, having been given in payment of services, was held not to have abated, and in *Matter of Sharff* (136 Misc. 627), where a bequest to the decedent's housekeeper was held entitled to preference by reason of the fact that it was given in payment for services rendered and thus founded upon a valuable consideration.

The rule that a legacy given for a valuable consideration will not lapse was considered in *Cole* v. *Niles* (3 Hun, 326; affd., 62 N. Y. 636) and in *Matter of Gough* (74 Misc. 315). In *Cole* v. *Niles* the testator bequeathed to the legatee the sum of $1,500 " to be paid * * * upon the express condition that he shall not render any account against the estate." The legatee predeceased the testator. At the time of his death he was a creditor of the testator to an amount not exceeding the sum of $1,500 and no account had ever been rendered or presented therefor against the estate. The court stated: " Where it is the intention of the testator that the legacy shall be deemed a satisfaction of a pre-existing debt, the acceptance of the legacy will extinguish the debt. * * * The legacy is the price, or value, put by the testator upon the opposing claim, which is submitted for acceptance at his decease. The final acceptance of the proposal involves the relinquishment of the claim, and forms

a good consideration for the legacy. A contract is thus completed by which the legatee or his representatives become entitled to the legacy; not as a bounty, but as the purchase price of the claim which has been cancelled or abandoned. This exception to the ordinary rule, that a legacy must lapse whenever the legatee has died before the death of the testator, has been repeatedly recognized in the English courts; and provisions of this character have invariably been sustained." (*Williamson* v. *Naylor*, 3 Y. & C. Ex. 208; *Philips* v. *Philips*, 3 Hare, 281; 64 R. I. 296; *Turner* v. *Martin*, 7 De Gex, M. & G. 429; *In re Sowerby's Trust*, 2 K. & J. 630.) A comparable situation to that presented here was considered in *Matter of Gough* (*supra*), where the language of the will was very similar to the present will. It read as follows: " I give, devise and bequeath the money deposited in the Germania Savings Bank in Kings County, N. Y., whatever the amount therein is or may — unto my friend, Carl Vollmann, as and for his services rendered to me in my lifetime, and for his commissions and services in settling up this my estate." The form of the deposit in the savings bank was " Carl Vollmann in trust for Annie Neumann." There were no additions to or withdrawals from the account during the lifetime of the testatrix. Carl Vollmann predeceased the testatrix. It was claimed by the representative of his estate that the legacy did not lapse upon his death before that of the testatrix. The sound reasoning in that decision by Surrogate KETCHAM, an able and experienced surrogate, requires quotation, particularly as it applies with equal force to the disposition of the legacy bequeathed to Dr. Whiteman. He said:

" While in its testamentary effect the will speaks as of the time of testatrix's death, it speaks as of the time of its execution when it refers to existing things. * * *

" By words which serve as her declaration, even though they may fail of testamentary efficacy, the testatrix said, six months after her deposit was made, that she wanted the amount of such deposit and any additions thereto to be paid to Carl Vollmann upon her death. She declared the ground of such wish to be the services which he had rendered to her and which he might render to her estate. Such expressions, whether found in a will or in any other solemn form, when made in full knowledge of the ınt then pending, justify the finding that the deposit, though in form a trust for the benefit of herself and her estate was, in her contemplation, a trust for her benefit during her life, with a vested right thereto in Carl Vollmann to enjoy the same upon her death.

" This right, if it existed, was transmitted to the representatives of Mr. Vollmann. * * *

" It is clear that a legacy given in discharge of a legal obligation is not a mere bounty, but is a recognition of a duty and, as such, does not lapse upon the death of the legatee * * * nor do we approach doubtful ground when the same rule is applied to a legacy made in recognition of a merely moral duty." (Citing *Stevens* v. *King*, 2 Ch. Div. 30.)

In the English case of *Stevens* v. *King* (*supra*) it was held that if the court found, upon the construction of the will, that the testator clearly intended not to give a mere bounty to the legatee but to discharge what he regarded as a moral obligation, whether it was legally binding or not, and if that obligation still existed at the testator's death a lapse did not occur merely because the legatee died in the testator's lifetime.

In New Jersey the same principle of law was applied in *Ward* v. *Bush* (59 N. J. Eq. 144; 45 A. 534). The legacy in that case was also given to a physician and read: " I give and bequeath unto Dr. J. J. Daly of Rahway, N. J., the sum of one thousand dollars, for value received." The legatee died in the lifetime of the testatrix and the question presented was whether the legacy lapsed. It was held that the testatrix intended to discharge a legal obligation and not to confer a mere bounty. The Vice-Chancellor there stated: " The case is said to be one of mingled bounty and obligation, and the rule with reference to the lapsing of legacies, being itself founded on presumed intention, is held to be not applicable, where the intent appears to be to discharge a duty,— a duty which, manifestly, is owing as well to the estate of the creditor as to the creditor himself. * * * In the case at bar there is enough to show that the legacy was given not as mere bounty but in discharge of an obligation. It need not appear to have been an exact equivalent to it. (*Philips* v. *Philips*, 3 Hare, 292.) The testatrix says that she gives it ' for value received.' These words, as well understood by laymen as by lawyers, raise the presumption of a legal consideration moving from the promisee sufficient to sustain the promise. * * * In the case at bar no evidence was offered on either side. There being, however, in the will itself an admission of valuable consideration received, the bequest comes within the above-mentioned rule, and must be held not to have lapsed by Dr. Daly's death in testatrix's lifetime. * * * Here the words used do, *prima facie*, import obligation. They import such consideration as would, in an action at law, support a promise."

The foregoing authorities justify the conclusion reached by me that by the provisions of the will, when considered in the light of the situation existing at the date of its execution, the testatrix intended the legacy to Dr. Whiteman, under paragraph ninth, to be

preferred and to be paid in satisfaction of what she deemed to be a valuable consideration passing to her from him in his lifetime. It is distinguishable from the bequests to him under paragraph thirteenth, which fail because no presumption of legal consideration can be inferred from the language of those gifts.

Submit decree on notice construing the will and settling the account accordingly.