In the Matter of the Accounting of JULIA HALLE et al., as Executors of the Will of IDA J. HALLE, Deceased.

Surrogate's Court, New York County, October 27, 1944.

*Robert M. Benjamin* and *Raymond A. Carter* for petitioners.

*Williamson Pell, Jr.,* special guardian for Eliot Schaffner and others, infants, respondents.

DELEHANTY, S. In this accounting proceeding the sole question for disposition concerns the operation of section 124 of the Decedent Estate Law. The will of deceased was executed in 1938. In its first paragraph it provides: " I direct that all inheritance, estate, transfer and succession taxes be paid out of my residuary estate." It then makes a number of substantial money gifts and devises an interest in real property. It continues: " Fourth: All the rest, residue and remainder

of all the property and estate, real, personal or mixed, which I may own or to which I may be entitled or over which I may have any power of appointment at the time of my death, of whatever nature and wherever situated, whether in the State of New York or elsewhere, including lapsed devises and lapsed legacies, after the payment of inheritance, estate, transfer and succession taxes and my debts and funeral expenses and the expenses of the administration of my estate, such rest, residue and remainder being herein referred to as my Residuary Estate, I give, devise, bequeath and appoint as hereinafter in this Article Fourth provided: ''. For the purposes of this will the phrase '' my residuary estate '' contained in the first paragraph is defined in the text just quoted.

At the time of deceased's death she carried in each of two commercial banks respectively a joint account in the names of herself and her sister. The sister survived deceased and so became absolute owner of the moneys in these accounts. The interest of deceased therein was in due course included in the tax estate of deceased. The question is whether the beneficiary of the joint accounts shall contribute ratably to the estate taxes imposed on the total tax estate.

In *Matter of Durkee* (183 Misc. 382) this court had occasion to discuss the operation of section 124 of Decedent Estate Law█ in relation to an indenture and a testamentary instrument dated in 1936 and 1937. It there said:

[The court here quotes that part of the opinion printed at 183 Miscellaneous 382 which begins with the words " It was no new thing " on page 386 and ends on page 387 with the words " the history of the statute shows that it was intended to have."]

In the unabridged Merriam-Webster International Dictionary the verb '' direct '' is defined: '' To give an order or instruction . * * * to instruct authoritatively * * * to * * * order with authority.'' In the Funk & Wagnall's New Standard Dictionary the verb is defined thus: '' to instruct or guide with authority; order; command.'' In this dictionary the synonyms for the verb are stated to be '' dictate '' and '' govern ''. The verb '' directs '' must be given its dictionary meaning in construing the statute. The quoted dictionary meanings make it clear that the statutory exception is to be satisfied only if there is found in the will a *command* or *dictation* that the equitable statutory rule for apportionment is *not*

to be applied. Both command and dictation import *certainty*. Here, as in most cases where the issue is presented to the court, the parties *speculate* as to what a particular testator really meant. In most instances the very arguments advanced show that there is no certainty in the text offered for construction. It is not enough for those resisting apportionment to say that in the will there is a hint that the testator might have thought of making his true estate assets bear all taxes on outside funds, or to say that there is doubt and uncertainty about his language. The choice of words is not difficult, if *direction* on the subject is to be given. Lacking explicit *direction* by will, the statutory direction to apportion is absolute.

The legislative history of section 124 of the Decedent Estate Law confirms this view. The section had its inception in 1930. Its genesis is outlined in the second supplemental report of the Commission to Investigate Defects in the Law of Estates submitted to the Legislature of 1930 and constituting a part of Legislative Document No. 69 of that year. Further discussion of the section is found in the additional 1930 report of the Commission which appears also to be a part of the same Legislative Document (Combined Reports of the Decedent Estate Commission, Reprint, pp. 287, 307, 310). In the report first mentioned the Commission to Investigate Defects in the Law of Estates reported to the Legislature that it had invited the membership of the State Tax Commission and the respective committees on taxation of both branches of the Legislature to co-operate in removing the " perplexities and technicalities of the existing tax statutes relating to estates " (p. 287). In reporting on the results of the suggested co-operation the Commission to Investigate Defects in the Law of Estates reported (p. 307) that by chapter 710 of the Laws of 1930 the Transfer Tax Law had been repealed and an estate tax substituted in text resembling that of the Federal Estate Tax Law. In this report (p. 309) the Commission refers to chapter 709 of the Laws of 1930 which created section 124 of Decedent Estate Law in its original text. Concerning this new section the report says: " It provides for the first time in this State a statutory method of equitably apportioning the estate tax (both Federal and State), as against the respective benefits derived by the various persons interested in the estate. The great complaint against the estate tax has been that this burden falls upon the residuary legatees, who are, under most wills, the widow, children, or nearer or more dependent relatives. Cases have arisen where the residue has been greatly depleted

by the imposition of the Federal Estate tax. Moreover, the residuary legatee under the present system is compelled not only to pay the tax assessed against the transfers passing by operation of the will, but is also compelled to pay the tax on other transfers to persons not participating in the decedent's estate. Thus, if a gift in contemplation of death has been made, or a transfer under an *inter vivos* trust becomes effective by reason of the death of the settlor, the tax on all such transfers is imposed upon the residuary legatees. This new law provides for an equitable apportionment of all these transfers by the surrogate in an accounting or other appropriate proceeding on notice to all the parties. *Thus the donee of a gift taking effect at death will be compelled to bear his fair share of the tax upon the amount of the property which he derived* and which was included in the general estate subjected to taxation. It is believed that this plan will present a fair, just and equitable method of the allocation of the estate tax, both Federal and State.'' (Emphasis supplied.)

In submitting for legislative action the text of the proposed new section the Commission followed its usual practice of appending a note specifying the evil to be remedied and the intended operative effect of the section. The reprint of the reports of the Commission at pages 338 and 339 contains the full text of the note. The evil to be remedied is cogently stated in the note. The remedy intended to be provided by the new act is there said to be '' an equitable apportionment of the estate taxes — both Federal and State — *as against all transfers of property included in the gross estate*'' (emphasis supplied). There can be no doubt that the legislative history of the statute fortifies its text and makes apportionment of estate taxes the rule and permits deviation therefrom only on explicit direction to the contrary.

Looked at in its entirety the will of deceased evidences an informed and careful draftsmanship. As already noted it was drawn in 1938 and it remained unchanged until deceased died in 1941. At the time it was drawn, the rule of the statute directing tax contribution had been in operation for many years and the distinction between the true estate and the '' tax '' estate was well known. The reported cases had repeatedly dealt with the burden of estate taxes and with the application of the terms of section 124 of Decedent Estate Law. Among the cases reported prior to the drafting of the will are *Matter of Caswell* (239 App. Div. 695 [1934]), *Matter of Murdoch* (142 Misc. 186 [1931]), *Matter of Randell* (147 Misc. 358 [1933]),

*Matter of Adler* (151 Misc. 338 [1934]), *Matter of Stern* (153 Misc. 442 [1934]), *Matter of Starr* (157 Misc. 103 [1935]), *Matter of Scott* (158 Misc. 481 [1936]) and *Matter of Rogers* (159 Misc. 86 [1936], affd. 249 App. Div. 238 [1936]). These reported cases constitute only a small fraction of the total number of instances in which tax allocations were made in this period. The bar was quite alive to the existence of section 124 of Decedent Estate Law and aware that its terms were being applied regularly in the closing of estates. The internal evidence furnished by the tenor of this will indicates the possession by its draftsman of a familiarity with the law of estates.

The will of deceased did not operate at all on the joint accounts which she held with her sister. It dealt only with her true estate. The argument which has now arisen about its text is based on the fact that the text is not explicit on the subject of taxes paid on funds outside the estate. Patently the draftsman of this will was capable of explicit statement. No controversy about the tax burden would have been brought to the court's attention unless there was obscurity in the text of the will. The rule of the statute is the guide where there is merely obscurity. The result is that the beneficiary of the funds passing outside the estate must pay her ratable share of the estate tax since there is no explicit *direction* to the contrary in the will.

A brief further word is perhaps desirable in relation to *Matter of Aldrich* (259 App. Div. 162). This case is held not to be authority to the contrary of the conclusion reached by the court. The will in that case was that of an attorney. The opinion of the court makes it clear that he discriminated between his " individual estate " and the totality of the taxed property. All that the case stands for is that in that particular will and because of its particular text the taxes on outside funds were payable by the true estate. Somewhat similar language has been found in other wills to be enough to accomplish like results. Here the court finds explicitly that there is no direction in the will that the true assets of deceased bear the entire burden of the estate tax.

The objections of the special guardian refer to the possibility that estate taxes may have accrued and may have been paid to the State of Ohio. The account refers to some real property interests of deceased in that State. The court holds that taxes owed to foreign sovereignties are to be dealt with as true administration expenses where the payment of such taxes is necessary, as apparently is the case here, to enable the execu-

tors to deal with the property at all.█ The court does not understand that the parties desire any hearing on the subject but one will be granted if sought.

Assuming that the decision on the apportionment of Federal and New York estate taxes disposes of the actual controversies in this accounting proceeding a decree may now be submitted on notice settling the account in accordance herewith. ·