In the Matter of the Accounting of WILLIAM MACFARLANE, as Executor of MERRY M. DENNIS, Deceased.

Surrogate's Court, Monroe County, February 1, 1945.

*William MacFarlane,* executor, petitioner in person.

*Robert W. Lochner,* for Nora M. Saunders, individually and as executrix of Thomas A. Saunders, deceased.

*Gilbert A. Nusbaum* for Anna M. Yerkes and another, legatees, respondents.

*Jacob L. Rubenstein* for Charles E. Streeter, legatee, respondent.

*Leonard B. Searing* for Hilda M. Horan and others, distributees of deceased legatee, respondents.

*Newton B. Castle* for Y. M. C. A. and others, legatees, respondents.

*J. Arthur Jennings* for Rochester Historical Society, legatee, respondent.

*C. Kent Williams* for John Dennis, legatee, respondent.

Feely, S. This testatrix by her last will, dated March 3, 1928, bequeathed to three stockholder employees, Mr. Streeter, Mr. Saunders, and Miss Yerkes, her majority interest in two " Dennis " corporations engaged respectively, one in the making, and the other in the selling, of candy.

She died in November of 1936, and on October 31, 1940, a decree was entered judicially settling the executor's account to that date. Some of the assets then remained to be liquidated. Two months after that decree the bequeathed stock in those two going concerns was turned over to the three employee-legatees aforesaid. As the estate was yet to be finally settled, there was included both in the decree of October, 1940, and also in the receipts for legacy signed by each of the three legatees named, a proviso to the effect that " the shares are received and held subject to recall by the executor in the event that it may be necessary to sell the same to pay the debts of the decedent and administration expenses as provided in the decree ". In neither the decree nor the receipts did the reservation mention death taxes. These have already been paid with interest, in the sum of $13,126.54. Had such a recall become necessary, this specifically bequeathed stock would be the last in order of liability for estate obligations. The liquidation has since progressed to the point where there has been enough realized to pay not only all debts and administration expenses, but also some further part of the general legacies, without recall of the legacies of stock already delivered. In regard to these legacies of specific stock there remains only the present question as to whether or not they are subject to apportionment of the estate taxes imposed by both State and Federal Governments, in the total aforesaid.

Since August 31, 1930, the Decedent Estate Law (§ 124, subd. 1) has provided that whenever an executor of a person thereafter dying has paid a death tax, " the amount of the tax so paid, *except in a case where a testator otherwise directs in his will* * * * shall be equitably prorated among the persons interested in the estate to whom such property is or may be transferred or to whom any benefit accrues." (Italics supplied.) The executor now claims that these three legatees of stock, by their acceptance of the legacy as aforesaid, became personally liable to pay their proportionate share of the death taxes imposed on this estate. Counsel for two of the legatees object thereto. Counsel for the estate of Thomas A. Saunders claims the case comes under the exception, " where a testator otherwise

directs in his will '' (Decedent Estate Law, § 124). There being no express direction in this will to exempt the remaindermen, any such intention must be inferrable from the provisions of the will as a whole in the setting of law and fact in which it was made in 1928. At the time this will was made, which was about two years before the enactment of the statute (Decedent Estate Law, § 124), which first exempted the remaindermen, the burden of paying such taxes was ordinarily on the residuary estate; and in that period there were seldom met in last wills any directions to apportion such taxes among the legatees generally. The will of this testatrix was drafted by an experienced lawyer, whom she named as the one to execute it; and in this will he followed the then general custom insofar as the allocation of the death tax burden was involved. By omitting then to have the will shift this burden from the remaindermen, the testatrix must be deemed to have meant that the then general practice would be followed in leaving these taxes to be paid, as usual, by the residuary legatees.

It is '' fundamental that the words of testator must be construed in reference to the law which existed at the time they were used, and this applies as well to statute as to general law. * * * ' In discovering the intent of the testator a will should be construed in the light of the statutory enactments in view of which it must be supposed to have been made.' '' (*Matter of Sheffer,* 139 Misc. 519, 522.) This is so in the case now in hand for the further reason that when testatrix in 1928 bequeathed those shares, specifically described and segregated (see *Matter of Tuck,* 171 Misc. 37), she was referring to a then existing thing which she meant should be given just as it then was, complete and unabated, if it were still in existence, at her death; and for this reason the established rule is that in respect of such specific legacies '' the will speaks as of its date '', rather than as of the date of death (*Matter of Shardlow,* 173 Misc. 795, 800). Her intention must be ascertained as of the date of the will in 1928 and the state of the law and legal practice at that time. She must be understood to have intended these specific legacies to have a preference over general legacies in respect of estate obligations of every sort; and she must have known that among them were death taxes. Her will was framed with reference to the then general practice of having the residuary legatees bear these tax burdens. There was not at that time any statute requiring this burden to be apportioned, in the absence of directions to the contrary.

Six years after the date of the will, by a codicil made in 1934, testatrix expressly reaffirmed these stock legacies as to the stores corporation, but as to the factory she made a minor adjustment of two of the fractions only, whereby Mr. Saunders was to have 51% instead of 56%; Miss Yerkes was to have 42% instead of 17%; but Mr. Streeter's 7% was left as it was in 1928. These changes were not material enough for the purposes of the present discussion to justify any inference that she had then substantially altered her original plan as it had been laid down by her in 1928. This codicil did not make the legacies of 1928 speak as of 1934, so as to subject them to the apportionment statute first enacted in 1930.* There is no reason found to impute any such intention to testatrix in 1934.

There is another peculiarity in these stock legacies that shows them to have been intended, as of a date long before the first enactment of an apportionment statute, to pass the property complete and unabated at her death; and this feature is that they were more obligatory than voluntary or gratuitous. This was mentioned in a decision of this court rendered October 7, 1940, in deciding the order of relative liability of the assets in the shrinkage that had by that time developed. This court referring to the fact that these two corporations, and this estate also, had been built up by testatrix and her husband largely through the efforts and loyal co-operation of those specific legatees of this stock in the manufacture and in the sale of candy, then said: " These legacies are more than mere bounty or gifts. They were almost obligatory, if not strictly or legally so ". Even a merely moral obligation, when it motivates a provision in a last will, takes the matter out of the class of a mere gratuity, and approximates a legal obligation that entitles such provision, and especially so when it is a legacy of specific property, not only to a preference in marshalling, but also to exemption from the statutory rule on predecease of the legatee occasioning the legacy to lapse.

" If the court found, upon the construction of the will, that the testator clearly intended not to give a mere bounty to the legatee but to discharge what he regarded as a moral obligation, whether it was legally binding or not, and if that obligation still existed at the testator's death a lapse did not occur merely because the legatee died in testator's lifetime " (*Matter of Shardlow*, 173 Misc. 795, 801, *supra*). On this principle it can as well be said that insofar as these specific legacies were in

* Cf. *Matter of Durkee*, 183 Misc. 382.— [REP.

kind apparently moral obligations, they probably were not meant to be abated or reduced by debts or taxes, except as a last resort in case of extreme necessity. In this connection counsel for the legatee urges that the executor in reserving in October, 1940, the right to recall these stocks, did so only to pay, if necessary, " debts and administration expenses "; and that he had already paid, by April of 1940, all of the death taxes and interest, except an item of $2,595.68 which he paid, after much discussion with the Federal authorities, in June of 1940. Shortly after receipt of such stocks, the three legatees each entered into contracts, in good faith, and with a similarly worded exception as to possible recall, whereby the stocks were assigned to third persons who are parties to this proceeding.

It is a fair inference, therefore, that at a time in 1928 when these three legacies of specific corporate stock were not liable to abatement by any apportionment of death taxes, neither by any statute then in force, nor by general custom among lawyers in drafting last wills, this testatrix in discharging what apparently was a moral obligation to recompense her business associates in building up these corporations and the estate of testatrix, did make her said associates such reward by willing over to them her majority and controlling interest in each of said corporations by means of testamentary provisions for delivery of proportioned and carefully readjusted lots of the stocks of said corporations; and that testatrix in so doing did not intend this recompense should be in any way reduced or diminished by death taxes, but that any such taxes should be borne, insofar as these specific stock legacies were concerned, by the residuary legatees in conformity with the state of the law and general legal practice in March of 1928 when this will was drawn, two years before the first enactment of any statute in this State that made such taxes apportionable among the legatees generally, in the absence of any other intention appearing in testatrix' will.

The executor has already paid all the death taxes now in question and has also paid part of the general legacies; and from the assets now in hand some further part payment can still be made on the general legacies, but in the end they probably will not be paid in full of the amount of their face value in the will. The executor in his brief, states: " it appears that the general legacies will not be paid in full "; and in this connection he cites *Matter of Andrade* (177 Misc. 532) which like *Matter of Martin* (176 Misc. 805) is based on the principle

that where there would be no residuary estate, so that the provision of the will directing taxes be paid out of the residuary estate, could not be given effect, then the estate taxes should be equitably apportioned among the various other legatees.

In the *Andrade* case (*supra*) there was both a testamentary trust and also an *inter vivos* trust; and the latter was composed of securities so particularly described as to constitute what the court significantly named a " specific legacy in trust "; but this specific legacy lost its characteristic preference when testator in a codicil manifested an intention to treat both trusts " with equal consideration ". (See, also, *Matter of Halsted*, 174 Misc. 292, affd. 261 App. Div. 892, and cases cited.)

On the contrary, the intention of Mrs. Dennis to put the death taxes on the residuaries conferred, in effect, on the other legatees some freedom from that burden. Although we do not know just what she would have done in this respect had she foreseen there would not be any assets for the residuary legacies, still it remains probable that she would not have abated or encumbered these peculiar stock legacies in any event.

In the *Andrade* case (*supra*) the court's reference to the " specific legacy in trust " indicates the court may have had in mind that where there is to be an " equitable " apportionment, and where the legacies, other than the residuary, are of different classes and values, some of which are merely general and gratuitous, and others specific and preferred, and sometimes morally obligatory as well, then the burden would fall first on the general legacies, even to the extent of exhausting the assets available for them; because the apportionment must be based on the relative value, nature and characteristics that testatrix intended each of them to have. The words " equitably prorated " in this statute (Decedent Estate Law, § 124) forestall any assumption that the purpose of the Legislature was to strip all legacies of their intended nature, special values and qualities, and to arbitrarily subject them all to general apportionment on the sole basis of their mathematical monetary value. It is an equally unfounded assumption that there cannot be any exemption from tax apportionment unless there appears on the face of the will an express direction to that effect.* Section 124 does not require the pertinent intention to be either " expressly " or " clearly " stated on the face of the will. The intention of testatrix governs the entire matter, and in many respects the intention is found mainly in the implications

---

* Cf. *Matter of Halle*, 183 Misc. 858.— [Rep.

of the testamentary plan. In this Dennis will the legacies, other than residuary, are of two different classes; some are merely general and gratuitous, while others are very specific, and among the latter the legacies of corporate stock are entitled to further preference because they appear to have been made in discharge of a moral obligation to recompense these three specific legatees for services rendered to testatrix. Incidental, possibly, to the devise of the cottage at Canandaigua Lake was the claim by a close relative of the devisee for services rendered as a companion to Mrs. Dennis. When this testatrix made her will, with the understanding the death or estate taxes would fall on the residuary estate, she endowed these specific stock legacies with considerably more than a blanket, general preference over the residuaries, both in making them specific and in making them for recompense. The preference in payment would be meaningless if it were not also a dispensation from abatement by taxes. To abate them by a general proportionate imposition of the taxes would be a frustration of the clearly implied intention of testatrix in the premises.

The taxes in question have already been paid by the executor out of the general assets. The general legatees are not entitled to have any part of those taxes recouped from the specific legatees. There are no " debts or administration expenses " yet to be paid which would bring into effect the proviso expressed in the stock receipts signed by the legatees, and by their assignees. In the circumstances it is not necessary to recall any of that specific stock for any estate purpose, and the executor is not under any duty to have the taxes apportioned. They have already been borne in effect·by those on whom they legally fell.

My conclusion, therefore, is that the executor's petition should be denied insofar as it demands that any specific legatee, and especially the three legatees of the specified corporate stock or any of the latter's assignees, be subjected to apportionment of the estate taxes on this estate; but as to other parties in interest the proceeding for judicial settlement of the Dennis estate may continue.

On notice submit for signature and entry a decree in accord with this decision.