In the Matter of the Accounting of MARY P. BURGIN, as Administratrix with the Will Annexed of HERMAN B. PARK, Deceased.

Surrogate's Court, Cortland County, November 14, 1951.

*Nathan A. Weiss* and *Theodore Fenstermacher* for administratrix, petitioner.

*Wortley B. Paul* for distributees.

*Nathaniel L. Goldstein, Attorney-General* (*John F. Hmiel* of counsel), for unknown heirs and next of kin.

GARDNER, Acting Surrogate. A hearing was held and evidence was offered by petitioner to show that testator was first known as Herman Brockman, who came to live with Thomas Park and his family on a farm in Cortland County as an eight-year-old boy prior to 1875. Thomas Park and his wife had two daughters, Jennie and Annie, and a son, John Charles. Herman grew up with these children and apparently assumed the name of Herman B. Park. Although he referred to Thomas Park and his wife as " Ma " and " Pa " and was treated on an equal basis with their three children, there is no proof or claim that he was ever legally adopted by them. After the

death of Thomas Park in 1899, Annie and testator remained on the family homestead and operated the farm as a partnership. Annie later married Mr. Gilkerson, who lived on the farm.

The will was executed December 22, 1925. Annie, named the executrix and bequeathed the residuary legacy in the " Eighth " clause, died in 1929, leaving no descendants. John Charles Park, bequeathed the sum of $1,000 in the " Second " clause, died in 1935, leaving five children. Jennie, bequeathed the sum of $1,000 in the " Third " clause, died in 1939, leaving no descendants. Olive Park, bequeathed the sum of $500 in the " Sixth " clause, died in 1939, leaving no descendants. Testator, who never married, died in 1949. Other legacies, each in the amount of $500, have been paid to three of the children of John Charles Park. Upon final settlement, the petitioner claims the undisposed assets of the estate should be distributed equally between Mary P. Burgin, Catherine Fletcher, Douglas Park, Samuel F. Park and Jean E. Park, the five children of John Charles Park, deceased son of Thomas Park. Although these five persons appeared in this proceeding, none of them has filed a claim. Petitioner contends the residuary legacy provided for in the " Eighth " clause of the will did not lapse upon the death of the residuary legatee prior to the death of the testator, but became vested and should be distributed to the distributees of said legatee because it was made in fulfillment of a " natural moral obligation and duty, recognized by decedent and owing to said Annie P. Gilkerson, and to the members of Thomas Park's family by reason of an existing factual relationship of brother and sister, which has existed between them throughout the years ".

The testator has no known distributees and the Attorney-General has appeared herein and filed objections contending the legacies did lapse and the undisposed assets of the estate should be paid to the Comptroller of the State of New York, pursuant to the provisions of section 272 of the Surrogate's Court Act.

The common-law rule is that a legacy lapses upon the death of the legatee prior to the death of testator. Petitioner herein relies upon the exception to this rule that, where a legacy is given in discharge of an obligation, and not as mere bounty to the legatee, it will not lapse and will survive the legatee's death prior to the death of the testator. This exception is explained and studied in *Matter of Shardlow* (173 Misc. 795) and the authorities cited therein, which indicate that the ques-

tion of whether a legacy is of bounty or in discharge of an obligation depends upon the intention of testator at the time he executed his will. The *Shardlow* case, and *Matter of Gough* (74 Misc. 315) each held certain legacies not to be mere bounty but to have been in discharge of an obligation of the testator to the deceased legatee. It should be particularly noted that, in each of these cases, the clause bequeathing the legacy contained certain words and phrases which exhibited an intention that the legacies were meant to satisfy an obligation. Furthermore, in the *Shardlow* case, where only one of three separate legacies to the same doctor was held not to lapse, the Surrogate made the distinction because of the language of the will. Also, these cases can be distinguished because the legacies were based upon a legal, and not a moral, obligation.

In the instant case, the language of the will is clear and unambiguous and, when taken as a whole, shows no express intent that these legacies were meant to satisfy a moral obligation. The language of the " Second ", " Third ", " Sixth " and " Eighth " clauses contains only the usual words of bequest, and contains no words or phrases showing any intent to satisfy a moral obligation. The " Tenth " clause states as follows: " The above named legatees and devisees are people who have always been regarded as brothers and sisters and nephews and nieces of mine. I was taken by Thomas Park when I was eight years old and brought up as his own child, but was never legally adopted by him. I have no knowledge of who my father and mother were or whether I have any actual brothers or sisters and so far as I know or have been able to ascertain I have no legal heirs or next of kin ". After careful examination it appears this clause was placed there in 1925 when testator was sixty years of age for one purpose, to wit: To show to the court his lack of knowledge of his own blood relations and the reason for his naming the members of the Park family as his legatees. It was not placed there to show that the legacies were meant in satisfaction of an obligation.

Extrinsic evidence is proper and should be considered only where there is a latent or patent ambiguity in the will. However, in this case, extrinsic evidence of the circumstances surrounding the testator at the time he made his will is here admissible to prove or disprove an intention concerning the legacies in question. (*Matter of Lummis,* 101 Misc. 258.) The evidence of the relationship between testator and the four legatees fails to support the petitioner's contention that these

legacies were made in fulfillment of a moral obligation. The relationship, although not a blood relationship, was a family relationship. Generally, over a period of years, as shown throughout the history of mankind, close relationship will develop between certain members of a family. Nevertheless, the common-law rule developed holding that, in case of a legacy to a child, other descendant, brother or sister of testator, such legacy would lapse when the legatee should die during the testator's lifetime. The moral obligation created by many acts of kindness and mutual consideration, so commonly found between members of a family, was not sufficient to prevent the lapse of such a legacy. (*Matter of Hunt,* 82 Misc. 211.) To remedy this inequity, a statute was enacted and is now known as section 29 of the Decedent Estate Law preventing the lapsing of a legacy to a child, descendant, brother or sister of testator. There would have been no need for the enactment of this statute if the common-law rule held that a moral obligation based solely upon the many acts of kindness and mutual consideration was sufficient to prevent the lapsing of such a legacy.

Concerning further the question of the residuary legacy to Annie P. Gilkerson, petitioner relies upon the " business and financial help and advice and services as partner and housekeeper ". The evidence shows Annie and testator operated the farm for many years as partners, each doing his or her part and each sharing equally in the farm profits. It was the obligation of Annie as a partner to render business and financial help and advice and to do the housework, sewing, cooking and other chores in return for testator's business and financial help and advice and his work in the fields and elsewhere on the farm. This partnership existed in 1925, when testator made his will, and there is no evidence that testator was indebted to Annie at this time or that testator had failed to perform his partnership obligation. Furthermore, Annie's husband lived on the farm doing very little toward helping his wife and testator.

If testator had intended to provide for payment of any of these legacies to the distributees of the legatees in case of their death during his lifetime, he would have so stated in his will. On the contrary, the will contains no statement, either express or implied, of such an intent; and, to hold it does, would violate the Statute of Wills. Furthermore, testator had ample time and opportunity after the death of each legatee to modify his will and make such provision and failed to do so.

It does not appear the relationship between testator and the four legatees was such that would support a consideration or obligation sufficient to prevent these legacies to lapse. To rule otherwise, relying solely upon an obligation based upon family relationship, or upon the partnership relation, without any legal consideration and without any evidence the testator so intended would unjustly extinguish the rights of unknown heirs or distributees of the testator.

The provisions of section 29 of the Decedent Estate Law are inapplicable because there is no proof that testator was ever adopted by Thomas Park so as to bring these legacies within the provisions of section 29 of the Decedent Estate Law. (*Matter of Hunt, supra.*)

The legacies bequeathed in the " Second ", " Third ", and " Sixth " clauses having lapsed, they fall in the residuary; and, the residuary legacy in the " Eighth " clause having lapsed, the undisposed assets of the estate should be distributed as if the testator died intestate. There are no known heirs or next of kin of testator, and the undistributed assets of the estate should be paid to the Comptroller of the State of New York, as provided in section 272 of the Surrogate's Court Act.

Submit decree on notice settling the account accordingly.